Woodrow **HAYNES**, Appellant,

v.

**UNITED STATES PIPE & FOUNDRY COMPANY** (Anniston Soil Pipe Division, formerly known as T. C. King Pipe and Foundry Company), Appellee.

No. 22727.

United States Court of Appeals
Fifth Circuit.
June 14, 1966.

Clarence F. Rhea, Hawkins & Rhea, Gadsden, Ala., for appellant.

John J. Coleman, Jr., Birmingham, Ala., Roy M. Woolf, Anniston, Ala., T. W. Thagard, Jr., Birmingham, Ala., for appellee, Knox, Jones, Woolf & Merrill, Anniston, Ala., Bradley, Arant, Rose & White, Birmingham, Ala., of counsel.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and KILKENNY,* District Judge.

GRIFFIN B. BELL, Circuit Judge:

This is an appeal from an order denying an employee the right to sue his employer for wrongful discharge. Appellant, employed by the appellee, was discharged during the term of a collective bargaining agreement in effect between his union and the employer. The suit for wrongful discharge was filed in the Ala-

* Of the District of Oregon, sitting by designation.

bama state court as a common law action and the employer removed it to the federal court on the jurisdictional basis of § 301(a) of the National Labor Relations Act, 29 U.S.C.A. § 185.[1]

The employer filed a defense in three counts. The second defense asserted the grievance procedure in the collective bargaining agreement as a bar to the suit. It was the employer's position that the grievance procedure in the agreement was exclusive, and that the employee was limited to it as a remedy. The facts were stipulated to the extent that the second defense was submitted to the court for determination without the intervention of a jury, and thereupon the District Court dismissed the action. The order of dismissal was accompanied by a memorandum opinion which pointed out that the employer and the employee through the union as his agent had expressly agreed upon an exclusive method for the settlement of disputes. The method contemplated claims for wrongful discharge of the type involved. The court was of the opinion that the agreement, by implication, excluded the court as a forum for the settlement of the claim. The employee filed a motion for rehearing and this was denied on the authority of Republic Steel Corporation v. Maddox, 1965, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, a case decided in the interim.

The grievance procedure in question is set up in Art. XII–A of the collective bargaining agreement as follows:

"A. Any controversy arising over the interpretation of or adherence to the terms and provisions of this Agreement shall be settled in the following manner without interruption of work:

"1. An employee who feels that he has a grievance shall first submit his grievance to his immediate foreman, within five (5) working days of the time the facts on which the grievance is based were available to him, with or without the assistance of a Union Representative, at the employee's option. The immediate foreman shall answer the grievance within two (2) working days after it has been discussed with him.

"2. If the grievance is not settled in step one, it shall be presented in writing, within two (2) working days after the foreman has given his answer, to the General Superintendent · of the Plant. The written grievance shall include the article of the agreement violated, the nature of the violation, and the remedy sought. The General Superintendent shall meet with the Grievance Committee and answer the grievance within three (3) working days after it has been presented to him.

"3. If no settlement is reached in step two above, a Representative of the International Molders' and Allied Workers' Union AFL–CIO, and the Shop Committee shall meet with the Assistant Plant Manager or the Personnel Manager, within four (4) working days after the decision has been rendered in step two; and one of these Company representatives shall render a decision within seven (7) calendar days after such meeting.

"4. If no settlement is reached in step three, the grievance shall be referred to an International Vice President of the Union and the Plant Manager, who shall meet at their earliest convenience within ten (10) calendar days after the decision has been rendered in step three, and the Plant Manager shall make his written decision within seven (7) calendar days following this meeting. Such decisions by the Plant Manager shall be final and binding upon all parties involved, unless the

1. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

International Vice President of the Union notifies the Plant Manager, by certified mail, within fourteen (14) calendar days thereafter of the Union's intentions to strike in protest of such decision, and such strike shall commence on the fourth work day following the date said notice is mailed to the Company.

"5. Any settlement between the Company and the Union at any step of the above grievance procedure, shall be binding on the Company and the Union and the aggrieved."

It was stipulated that the grievance involving the alleged wrongful discharge of appellant was filed and processed through the four steps of the grievance procedure which ended with a denial of the claim by the plant manager. There is no contention by either party that a claim for wrongful discharge was not within the class of grievances to be handled in this manner. The fifth step, which would have required a letter from the international vice president of the union to the plant manager to the effect that the union intended to strike in protest of his decision, was not taken. This suit followed.

Congress explicitly stated, by way of a policy, in § 203(d) of the Taft-Hartley Act, 29 U.S.C.A. § 173(d), that in settling grievance disputes, the Act contemplated that the method agreed upon by parties to collective bargaining agreements should be the means of settling such disputes.[2] In suits under § 301(a), the Supreme Court construed this policy as requiring the courts to give full play to the means chosen by parties to a collective bargaining agreement for settlement of their differences. United Steelworkers v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; see also Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works,

Inc., 5 Cir., 1961, 292 F.2d 112, cert. den., 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190.

In Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the court effectuated the above policy by holding that a district court had jurisdiction and authority under § 301(a) to grant specific performance of the arbitration provisions contained in a collective bargaining agreement. The court also held that federal substantive law and not state law applied in such cases. See also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co., 1962, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, on this latter point.

Subsequent to *Lincoln Mills*, this policy of giving full play to the means chosen by the parties for resolving disputes has been given further shape in various Supreme Court opinions. Of the three available forums for the resolution of disputes—contractual grievance procedure such has arbitration, or the court, or the picket line—the Supreme Court has consistently sanctioned the one chosen by the parties in their collective agreement. Employers are denied access to the courts where the parties have previously chosen the arbitration remedy. Drake Bakeries v. Local 50, 1962, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; United Steelworkers v. American Mfg. Co., supra; United Steelworkers v. Warrior & Gulf Navigation Company, 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. Likewise, a union has been denied access to the picket line where it has chosen arbitration. Teamsters Union v. Lucas Flour Co., supra. The court has opened the doors of the courthouse only when the parties have chosen this forum over the others. Smith v. Evening News, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.

2. Congress refused, when enacting § 203 (d), to prescribe the remedy of compulsory arbitration for grievance disputes on the ground that it was not desirable for the federal government to dictate particular methods for settling such disputes. Legislative History of the Labor Management Relations Act, 1947, pp. 434–35, Sen.Rep. No. 105, April 17, 1947.

2d 246; Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462.

The common theme of these cases is that when a dispute arises within the scope of a collective bargaining agreement, the parties are relegated to the remedies which they provided in their agreement. The full impact of this doctrine was reached in Republic Steel Corp. v. Maddox, supra, where it was held that the individual employee is bound by the remedy selected by the union as his agent. In that case an employee sued in the Alabama state courts for severance pay and was successful. The Supreme Court reversed on the ground that the applicable collective bargaining agreement provided for an arbitration remedy which he had not pursued. The court held that his claim was barred by virtue of the remedy of the agreement. It was his exclusive remedy under the circumstances.

The exclusive remedy premise in all of the above cases, just as was true in Maddox, was based in each instance on an arbitration clause. In the instant case, the grievance procedure remedy of the agreement falls short of being pure arbitration since there is no provision for a neutral party to make the ultimate decision. Another distinction between Maddox and the instant case is that Maddox, unlike the employer here, made no effort to process his grievance under the agreement. This presents the additional question of whether the doors of the court open after the contractual remedy has been exhausted.

## I.

We first deal with the distinction based on the fact that the Maddox agreement contained an arbitration clause while the agreement in suit does not. The agreement here ends with the decision of the plant manager unless the union takes the grievance to a strike or at least notifies the employer that a strike will take place. The statutory policy statement, § 203(d), supra, makes no mention of arbitration. As previously noted, the Supreme Court has said that the policy of § 203(d) " * * * can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." United Steelworkers v. American Mfg. Co., supra. The policy contemplates whatever means the union and the employer may have chosen to settle grievances. See General Drivers Union v. Riss & Co., 1963, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed. 2d 918, where the method of settling grievances fell short of an arbitration clause. There the court said that where the agreement provides that the decision made is final and binding, the District Court has jurisdiction under § 301 to enforce the award. See also Humphrey v. Moore, 1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. Moreover, the national labor policy inherent in the Lincoln Mills-Maddox line of cases is that an employee is bound by such grievance remedies as his union may negotiate. The means chosen here did not include arbitration but it is binding on the employee. It was his remedy and the next question presented is whether the doors of the court opened to him when he exhausted that remedy.

## II.

We may assume arguendo that appellant has exhausted his contractual remedy. His claim was carried to the point where it would have been necessary for his union to notify the employer of its intention to strike in support of his claim. At this point, the decision denying him relief was "final" under the terms of the collective bargaining agreement. Are the processes of the court now available to him for contesting or avoiding that final decision?

The answer to this question is not altogether clear for the Supreme Court has not dealt with precisely such a situation. There was no such issue in the Maddox case. Appellant argues that the implication may be gained from some of the language of the majority opinion in Maddox that the employee may sue once he has exhausted his remedy under the grievance procedure of the collective bargain-

ing agreement. There is some such language but there is other language, equally compelling, to the contrary.

Two recent rulings by the Sixth Circuit Court of Appeals shed some light on the question. In Union News Company v. Hildreth, 6 Cir., 1961, 295 F.2d 658, the court determined that the claim of an employee was barred by her union's agreement with the employer that there was just cause for the discharge. After a subsequent trial, the case was again appealed and the court concluded that the District Court properly directed a verdict for the defendant employer. Hildreth v. Union News Company, 6 Cir., 1963, 315 F.2d 548; cert. den., 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59. The Sixth Circuit stated that a different decision was not required by Smith v. Evening News Association, supra, which had been decided in the interim. It was pointed out that the question was whether the union might bar the employee's claim by agreeing with the employer that the employee was discharged for cause. The question was not whether the individual employee might assert the alleged grievance in court. The doors of the court were open but the claim was barred.

Another employee claim arising out of the same circumstances was before the court in Simmons v. Union News Company, 6 Cir., 1965, 341 F.2d 531. The court affirmed a summary judgment for the employer on the authority of *Hildreth.* Certiorari was denied, 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125, with Justice Black, joined by the Chief Justice, dissenting. This dissent brings the question into focus as follows:

"Although this Court has gone very far in some of its cases with reference to the power of a collective bargaining union to process the personal grievances of its members, it has not yet gone so far as to say that where there is a personal grievance for breach of a collective bargaining agreement, the employee can be deprived of an independent judicial determination of the claim by an agreement between the union and the employer that no breach exists. But this is exactly what was done to petitioner and Miss Hildreth. Though I dissented in Republic Steel Corp. v. Maddox, 379 U.S. 650 [85 S. Ct. 614, 13 L.Ed.2d 580], I was, and still am of the belief that the majority opinion purported to preserve the right of an employee to sue his employer if his union refused to press his grievances. However, I fear that the decisions below in the Hildreth case and in this one go a long way toward effectively destroying whatever redress this Court left the individual employee in Maddox. * * *"

■■ The fact of the matter here is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim was thereby barred. The court has jurisdiction. Smith v. Evening News Association, supra. The action under the grievance procedure, here a final decision under the terms of the agreement, may be asserted in bar as an affirmative defense. That is this case, and thus it must be affirmed. The treatise writers agree with this view. See Jones, Compulsion and the Consensual in Labor Arbitration, 51 Va.L.Rev. 369, 375 (1965); Cox, Rights under a Labor Agreement, 69 Harv.L.Rev. 601, 648–49 (1956). And cf. Humphrey v. Moore, supra.

Appellant does not contend that the union did not faithfully represent him. See Humphrey v. Moore, supra, on the duty of the union to do so. He does not charge fraud on the part of either the company or the union. This is a run-of-the-mine case where the grievance procedure was followed and the adverse decision against appellant became final. Being dissatisfied, he sought to start anew in the face of the bar of the final decision under the grievance procedure. This he may not do under the current status of federal labor law as we understand it.

Affirmed.