Thomas J. BOONE, Appellant,

v.

**ARMSTRONG CORK COMPANY,**
Appellee.

No. 23920.

United States Court of Appeals
Fifth Circuit.

Aug. 28, 1967.

Dixon L. Pyles, Pyles & Tucker, Jackson, Miss., for appellant.

Melvin B. Bishop, Daniel, Coker & Horton, Jackson, Miss., for appellee.

Before RIVES, COLEMAN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This is an action under § 301(a) of the National Labor Relations Act, 29 U.S.C.A. § 185, by Thomas J. Boone against his former employer, Armstrong Cork Company, for alleged wrongful discharge in violation of a collective bargaining agreement between Armstrong and Local 363, United Rubber, Cork, Linoleum and Plastic Workers. We reverse and remand.

In 1954 Boone was employed by Armstrong and became a member of the union. From 1954 until the present the union has had collective bargaining agreements with the company which have not varied in any manner material to this action.

On September 26, 1956, Boone sustained a back injury in the course of his employment and on medical advice the company assigned him lighter work. On February 6, 1957, the company informed Boone that he was not to return to work and the following day wrote its insurance carrier that Workmen's Compensation payments had been begun.[1] Proceedings before the Mississippi Workmen's Compensation Commission were started, and on October 23, 1957, an attorney-referee determined that Boone, because of his back injury, had developed an anxiety neurosis and was temporarily totally disabled.

The company continued to pay various supplemental benefits, and Boone received Workmen's Compensation payments. In October, 1958, the company removed his name from the seniority

---

1. The letter stated: "Since September the Company has given Mr. Boone light work in complying with the doctors' orders. The work has been even further lightened at the employee's request to the point where there is no longer any work available that the employee can perform.

"It is the Company's feeling that Mr. Boone would be better off resting at home and receiving Workmen's Compensation until such time as he is deemed fit for work. Consequently, the disability has begun effective February 6, 1957."

roster but at the request of the union replaced it. Boone filed grievances for vacation pay in 1958 and 1959; both proceeded to arbitration and the first was decided in Boone's favor while in the second the company prevailed.

In February, 1959, the company moved to reopen the Workmen's Compensation claim on the basis of a material change in Boone's condition; this was overruled. In January, 1960, a second motion to reopen the claim was filed. After a hearing the attorney-referee found that Boone had reached maximum medical recovery on or before December 10, 1959, and denied all claims subsequent to that date. Boone appealed and on November 5, 1962, the attorney-referee was upheld by the Supreme Court of Mississippi.

Eight days later (on November 13) the company sent Boone another letter.[2] On November 20, 1962, a certified letter was delivered to Boone's home from the president of Local 363 informing Boone that the union had received a copy of the letter from the company and asking whether Boone wished to protest the action of the company. It continued:

"If it is your desire to do so, the Contract gives only ten (10) calendar days to institute such action, and that period started with the date of the Company's notice to the Union and will run out November 23, 1962. If you have any intention of trying to return to employment at the plant, will you please notify me immediately? Otherwise there will be nothing the Union can do in your behalf."

Boone was deer hunting at the time, and his wife signed for the letter. When Boone returned on November 25, he immediately telephoned the union president requesting him to see if the company would extend the time so that a grievance could be processed. The union did so, the company refused, no further action was taken by the union, and Boone began the present action.

Boone's complaint was filed in the Chancery Court of Smith County, Mississippi and removed to the district court. It alleged that the company had discharged and refused to reemploy him in violation of the collective bargaining contract and that as a result he suffered lost wages, bonuses and other benefits in addition to a loss of seniority. It demanded reinstatement to the job with proper seniority and payment of back wages and bonuses. The district court dismissed, holding that Boone had failed to establish a breach of the contract and that he was legitimately discharged for

2. "Dear Mr. Boone:
"We have been advised by the Traveler's Insurance Company that a final decision has been reached regarding your claim for compensation and that such claims subsequent to December 10, 1959 have been denied. They report that all bills assigned them by the Commission have been paid.
"During the rather long interval between that date and the present, we have continued your Life Insurance payments and your Hospitalization payments. As it turns out we should not have done so but, of course, neither of us knew what the final decision of the courts would be.
"We are as of this date terminating your employment record and will not, of course, continue these or other benefits. You can, however, if you care to do so, continue both your Life Insurance and your Hospitalization by making payments directly to the Insurance Companies involved. No examination is required if you apply within 31 days. Mr. Shoemaker can give you the necessary information if you are interested.
"We have also checked your retirement account and find that you have a balance of $231.32. If you will sign and return the enclosed form to us together with your certificate and plant pass, we will send you a check for this.
Very truly yours,
/s/ W. S. Radcliffe
W. S. Radcliffe
Plant Manager"

EMM
Enclosures

failure to report for work after a layoff in excess of eighteen months.

■■ A union member may sue his employer for breach of a collective bargaining agreement under § 301(a) of the National Labor Relations Act (29 U.S.C.A. § 185(a)). Smith v. Evening News, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Federal substantive law applies whether the action is brought in federal or state court. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Local Union No. 721, United Packinghouse, Food and Allied Workers, AFL-CIO v. Needham Packing Co., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964); Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). "The Supreme Court by virtue of *Evening News* has now committed the federal courts to fashioning a body of law encompassing the rights of all parties concerned in the bargaining process," Belk v. Allied Aviation Service, 315 F.2d 513, 516 (2nd Cir.) cert. denied, Rogers v. Allied Aviation Service Co., 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 74 (1963), although state rules may be adopted where appropriate and consistent with federal labor policy. See International Union, U.S.A. & A.I.W. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

We first turn to whether Boone may maintain the present suit in view of the fact that the grievance procedure set out in the agreement has not been utilized.

■ If the collective bargaining agreement contemplates the use of a grievance procedure to protest a specific employer action, an employee may not sue for breach of contract on the basis of that action without first resorting to the procedure. Republic Steel Corp. v. Maddox, supra; Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Rhine v. Union Carbide Corp., 343 F.2d 12 (6th Cir., 1965); Wimberly v. Clark Controller Co., 364 F.2d 225 (6th Cir.,

1966); Kaferle v. Fredrick, 360 F.2d 536 (3rd Cir., 1966); Woody v. Sterling Aluminum Products, Inc., 365 F.2d 448 (8th Cir., 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105.

■ Federal labor policy favors the use of grievance and arbitration procedures, and contractual provisions should be liberally interpreted so as to require resort to such procedures wherever a contrary result is not clearly indicated. United Steelworkers of America, AFL-CIO v. Warriors & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); International Ass'n of Machinists v. Haynes Corp., 296 F.2d 238 (5th Cir., 1961); General Teamsters, Chauffeurs and Helpers Union v. Blue Cab Co., 353 F.2d 687 (7th Cir. 1965). See also Section 203(d) of the Labor Management Relations Act, 29 U.S.C.A. § 173(d). Discharges have been held to be subject to general grievance provisions similar to those involved here. General Teamsters, Chauffeurs and Helpers Union v. Blue Cab Co., supra; Local No. 824 v. Brunswick Corp., 342 F.2d 792 (6th Cir., 1965); Amalgamated Meat Cutters v. Way, 238 F.Supp. 726 (E.D. Pa., 1965).

Under some circumstances failure to resort to the grievance procedure may not bar a § 301(a) suit. Thus the Supreme Court commented in Vaca v. Sipes, supra, "[W]e think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, [if] * * * the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U.S. 171, 87 S.Ct. at 914, 17 L.Ed.2d at 855. This duty of fair representation, the Court noted, does not require a union to process a frivolous grievance nor does it prevent a union from settling a grievance prior to arbitration on terms not satisfactory to the employee.[3] But "a union may not arbitrarily ignore a meritorious

---

3. See especially Union News Co. v. Hildreth, 295 F.2d 658 (6th Cir., 1961) and

Simmons v. Union News Co., 341 F.2d 531 (6th Cir., 1965).

grievance or process it in perfunctory fashion." [4]

The Court also made clear that should an employer repudiate the grievance procedures it would be estopped from relying on failure to exhaust these procedures as a defense in a § 301(a) suit. 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed. 2d at 855. It seems clear that a refusal to abide by contractual terms requiring the processing of a matter through a grievance procedure would be such a repudiation.

Under some circumstances an employee may be required not only to resort to a contractually-prescribed procedure to vindicate his contractual rights but also in a subsequent § 301(a) suit may be bound by the outcome of that procedure. In Haynes v. United States Pipe & Foundry Co., 362 F.2d 414 (5th Cir., 1966) this court held that where a decision of a plant manager on a grievance matter was, under the terms of the agreement, "final," this decision could be asserted in bar as an affirmative defense in a subsequent § 301(a) action for breach of the agreement. Noting that "when a dispute arises within the scope of a collective bargaining agreement, the parties are relegated to the remedies which they provided in their agreement," we held that a union and an employer could so define an employee-member's contractual rights as to make the contractual remedies for their violation exclusive, even to the point of making a § 301(a) suit unavailable. See also Miller v. Spector Freight Systems, Inc., 366 F. 2d 92 (1st Cir., 1966); Rushton v. Howard Sober, Inc., 198 F.Supp. 337 (W.D. Mich., 1961).

Turning to the facts presented here, the general contractual grievance procedure may be summarized as follows:

(a) If a "complaint" is not "satisfactorily adjusted" between the employee and/or the union steward and the foreman concerned, it "shall" be reduced to writing by the union, in which case a "grievance" exists.

(b) The grievance is subjected to "further discussion" between the foreman concerned and the department steward,

(c) Within seven days the union chief steward may refer the grievance to the general foreman or department head;[5]

(d) Within seven days the plant bargaining committee of the union may refer the matter to the plant manager's office where it is to be discussed by the committee and the plant manager (or the assistant plant manager); within seven days of the last discussion the company must give a written decision on the grievance. Unless notice of intent to arbitrate is given within seven days the company's decision "shall thereupon become final."

(e) In the event the grievance has not been satisfactorily settled, at the request of either party the matter may be submitted to three arbitrators selected in accordance with a prescribed procedure. "The decision of the majority of the Board of Arbitrators shall be final and binding on the parties hereto, and shall be reduced to writing by the arbitrators * * *"

4. But note the comment of Mr. Justice Fortas (joined by the Chief Justice and Mr. Justice Harlan) that this matter was not before the Court, 386 U.S. 171, 87 S. Ct. 903, 17 L.Ed.2d at 863, and Mr. Justice Black's dissenting view that "[e]ither the employee should be able to sue his employer for breach of contract after having attempted to exhaust his contractual remedies, or the union should have an absolute duty to exhaust contractual remedies on his behalf." 386 U. S. 171, 87 S.Ct. at 926, 17 L.Ed.2d at 868.

5. In the earlier contracts this step was not provided, and if the department steward and the foreman did not settle a grievance it could be referred by the plant bargaining committee directly to the plant manager's office.

■ The agreement also provides that "in the event the company determines that an employee's conduct justifies discipline" the employee may be suspended or discharged. The union is to be notified of the discipline and "the reason or reasons therefor." This section further provides:

"Any grievance which may result from this action will be taken up through the full grievance procedure provided that such grievance must be reduced to writing within ten (10) calendar days from the date of notice to the union of the discipline or the company's decision shall be final."

There is no indication in the record that the company attempted to invoke its contractual right under the section authorizing disciplinary discharge. The company's letter to Boone does not purport to designate any conduct on which the termination was based; at the most it is only a notice of termination. The only notice given to the union was a copy of the company's letter to Boone, which neither purported to be a notice of discharge for conduct warranting discipline nor assigned "reasons therefor." Since the company did not proceed adequately under this section, the ten-day limitation was not applicable.

■ We hold that the contract required Boone's "termination" be processed through the grievance procedure. We conclude, however, that failure to resort to the grievance procedure was caused by a misunderstanding by all parties concerned as to the availability of the procedure. Since the company did not effectively invoke the disciplinary provision, the limitation of ten days from notice to the union did not apply. Thus the matter should have been taken up through the general grievance procedure under which the seven-day cutoff period does not begin to run until the department steward and the foreman involved have been unable to settle upon a disposition of a written grievance. A prerequisite to a written grievance is inability of the employee concerned and/or the union steward to settle a "complaint" with the foreman. "Complaint" is nowhere defined but it is clear no complaint could exist until the aggrieved party is aware of, or reasonably could be expected to be aware of, the company's action. When an employee is on the job this presents no problems; it is only because of Boone's unusual status at the time of his termination that this problem is now presented.

Since the parties, under a common misconception of their contractual obligations, have abandoned the grievance procedure before any "complaint" could exist, Boone is entitled even at this late date to resort to the grievance procedure. In view of the strong policy favoring resort to contract grievance procedures before the courts are presented with this type dispute, we feel that under the facts the company has not wrongfully refused to process the grievance so as to eliminate the requirement that the process be used. Nor has the union, by failing to take further steps, breached its duty to Boone so as to justify dispensing with the requirement.

The case must be remanded to the district court with directions to suspend further proceedings until the parties have had reasonable opportunity to exhaust the contractual grievance procedure. The inquiry and determination of the grievance proceeding should be made without regard to substantive determinations heretofore made by the district court.

Without attempting to definitely state the controversy or to influence the outcome of the grievance process, we feel it appropriate to note issues raised. The basic question is whether Boone was discharged in violation of contract. The company contends that the termination was justified because Boone failed to report back to the company after a layoff of eighteen months. To resolve this issue it will be necessary to determine whether Boone in fact was ever laid off,[6] whether

---

6. "Layoff" is defined in the agreement as "a separation from work for an indefinite period * * * because of lack of need for an employee's services." The record

the contract required him to report at a specific time,[7] and whether he failed to do whatever was required.

■ In the alternative, the company claims that it has the right to discharge at will as long as the motive is not racial prejudice or an employee's protected activity under Federal labor law. It is true that whatever rights an employee subject to a collective bargaining agreement possesses limiting his employer's right to discharge him must find their source in the agreement. Broniman v. Great Atlantic and Pacific Tea Co., 353 F.2d 559 (6th Cir., 1965), cert. denied, 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966). But a restriction on an employer's right to discharge at will may be implied. Local 205 v. General Electric, 172 F.Supp. 53 (D.Mass., 1959). If the issue is reached the grievance procedure must determine whether the contract, construed in light of the intentions of the parties, imposed restriction on the company's right to discharge [8] and the scope of any such restriction, if imposed.[9]

■ Under *Haynes* and the current status of federal labor law as therein discussed, any "final" decision reached at the plant manager level, or at arbitration if sought, will be binding on Boone, the union and the company (subject to the limitation expressed below of judicial inquiry into the duty of the union to give fair representation).

■ Thus, if the grievance procedure settles the matter to Boone's satisfaction, that will end the suit. If the union refuses to process Boone's grievance, or if the union settles the grievance short of arbitration, Boone may require judicial

---

suggests that the February 6, 1957, action by the company was at least partially stimulated by the unavailability of sufficiently light work for Boone to perform. The agreement contemplates layoffs (and provides for reemployment according to seniority) of employees unable to perform regular work because of disability incurred in the course of employment. On the other hand, it does not appear that the company followed the contractual procedure relating to layoffs. It also continued to pay fringe benefits, which would have been unnecessary had Boone been laid off. It may be argued that the contract provides for a status of "absence resulting from [an] occupational accident * * * compensable under the compensation law" that differs from layoff status.

7. Seniority is broken by failure of a laid off employee to report to the company within one week from notice of available work, or by a period of layoff in excess of eighteen months. An employee on an approved leave of absence must report on the first day following the expiration of the approved time or seniority is broken. But it is not clear what—if any—is the corresponding duty of an employee who is absent because of a compensable occupational accident (although he is considered "on the payroll" only while eligible to receive benefits under the Workmen's Compensation Law). The determination of the obligations of the company and an employee when it is preliminarily—or finally—determined that the employee is no longer eligible for compensation benefits, or has not been for a period of time which has already elapsed, is a matter especially suited for settlement through the grievance procedure.

8. The agreement contains a "management prerogative" clause. However, it also contains a detailed provision for processing a grievance arising from suspension or discharge of any employee on the ground that the employee's conduct warrants discipline. Seniority is broken by "discharge for just cause." The seniority provisions further specify that an employee who has not established seniority (by accumulating sixty days of continuous service) "may be dismissed * * * without regard to length of service or *reasons therefor* and such action shall not be taken up by the union as a grievance." (emphasis supplied) It may be contended that the contract, read as a whole in light of the intentions of the parties, prohibits the termination of an employee who had established seniority without "just cause," "reasons therefor," or designation of certain conduct "warranting discipline," and that the company may be required, through the grievance procedure, to justify such terminations.

9. Local 205 v. General Electric, supra, suggests that the implied restriction might be a requirement of "objectively justifiable cause," defined as what a reasonable person would find sufficient. 172 F.Supp. at 56, 58.

inquiry into whether the union has so breached its duty to him of fair representation that the defense of failure to exhaust contractual remedies is not available to the company under Vaca v. Sipes.[10]  Of course, if the company should refuse to resort to the grievance procedure no defense of failure to exhaust contractual remedies could be successfully asserted and the suit must proceed.

Reversed and remanded.

**10.** In *Haynes* the contract specifically provided that "Any settlement between the Company and the Union at any step of the * * * grievance procedure, shall be binding on the Company and the Union *and the aggrieved*." (emphasis provided). The contract at issue here provides in express terms only that the plant manager's decision (if arbitration is not demanded) and the decision of the arbitrators, are "final." We read Vaca v. Sipes and the Sixth Circuit cases cited at note 3, supra (and relied upon in *Haynes*) as establishing that where the contractual power to invoke and continue the grievance procedure lies solely in the union, the union may, short of arbitration, settle the grievance by failing to invoke further steps of the procedure, and the employee will be barred from subsequently relitigating the merits of the issue in a § 301(a) suit by the requirement that he exhaust his contractual remedies. A pre-requisite to a § 301(a) suit in such a case is allegation and proof that the union arbitrarily discriminatorily or in bad faith failed to exhaust the contractual procedure. Vaca v. Sipes, supra, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d at 857. While no such allegation appears in this action, we feel that upon remand, if the matter is not carried through the contractual procedure, Boone should have opportunity to allege breach of this duty by the union and to bring the union into the action if necessary to a proper apportionment of liability and damages (if either exists) between employer and bargaining representative. See Vaca v. Sipes, supra, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d at 856, 862.