**SOURDOUGH FREIGHT LINES, INC., Appellant,**

**v.**

**TEAMSTERS UNION LOCAL NO. 959 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, Appellee.**

**No. 3782.**

Supreme Court of Alaska.

Nov. 9, 1979.

Joseph W. Sheehan, Fairbanks, for appellant.

Fredric R. Dichter, Anchorage, for appellee.

Before RABINOWITZ, C. J., BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

---

**23.**  *See* note 4, *supra.*

OPINION

BURKE, Justice.

The issue in this appeal is whether the superior court erred in granting summary judgment in favor of a labor organization in an action for declaratory relief, based upon the court's conclusion that the grievance procedure contained in that organization's collective bargaining agreement with an employer established the exclusive method for resolving disputes arising under the agreement. We have concluded that the court erred and reverse and remand the judgment appealed from.

Sourdough Freight Lines, Inc. and Teamsters Local No. 959 are parties to a collective bargaining agreement covering working conditions, rate of pay and grievance procedures. A dispute arose between Sourdough and Local 959 relative to the application of article XIII, section 6, concerning the rate of pay for drivers with respect to movements north of Fairbanks, Alaska. The matter was submitted to arbitration as provided by article VII, but the grievance procedure resulted in an impasse between the parties.

Under the terms of the contract, each party is entitled to designate two representatives to the Board of Arbitration. A decision of three of the four members of the Board is necessary to bind the parties. In the instant case the vote was two to two;

thus, there was no decision binding on either party and an impasse under the grievance procedure had been reached. In such situations, according to the collective bargaining agreement, the union may resort to economic action after giving twenty-four hours notice.[1] As a result of the impasse, Local 959 on May 26, 1977, advised Sourdough that unless wages for drivers operating north of Fairbanks were adjusted to conform to its request, economic action would be instigated. The following day Local 959 began a strike and picketed Sourdough's facilities. Sourdough agreed to make the disputed payments under protest.

On June 8, 1977, Sourdough filed a complaint with the superior court requesting a declaratory judgment interpreting the disputed contract provisions, particularly article XIII, section 6. Jurisdiction was based on Section 301 of the Taft-Hartley Act.[2] After the case was at issue, the parties filed cross-motions for summary judgment. The superior court ruled in favor of Local 959, holding that the grievance procedure in the collective bargaining agreement was the sole remedy available to the parties for resolution of contract interpretation disputes. This appeal followed.

Two competing principles of labor law are involved in this case. On the one hand there is the principle, followed by the superior court, that under a collective bargain-

---

1. The relevant part of article VII of the agreement reads as follows:

    8. In the event that arbitration becomes necessary, the Board of Arbitration will be composed of the following:
    Two (2) members appointed by the Union and two (2) members appointed by [Sourdough]. The above said four (4) members will select a fifth (5th) member, mutually agreed upon, who will serve as Chairman. The Chairman will not be entitled to vote under any circumstances. His sole duty will be to maintain order, certify the results of polls of the Board on questions which are voted upon, and any other purely administrative duties that are delegated to him by the Board. The decision of three (3) of the four (4) members will bind the parties. In the event the matter cannot be adjusted within twenty-four (24) hours from the date of the grievance hearing, the Union may take any economic action it deems necessary to settle

the matter, providing the Employer shall be given twenty-four (24) hours notice of any economic action contemplated.

2. Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185(a) (1976) provides:

    (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
    This statute also confers jurisdiction on the state courts. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

ing agreement the court should defer to whatever means of dispute resolution the parties themselves have agreed to.[3] On the other hand, the policy behind the federal labor law[4] favors settlement of contract interpretation disputes by reasoned deliberation rather than by naked economic force.[5]

One point needs clarification at the beginning. The question is not whether the superior court *had* jurisdiction, but whether it should have exercised it.[6] *See United Electrical Radio and Machine Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1224 (7th Cir. 1975) (failure to exhaust compulsory arbitration procedures of contract is not jurisdictional; rather complaint fails to state cognizable claim).[7]

■ It is well settled that, where the parties to a collective bargaining agreement have specified the grievance procedures to be utilized in resolving disputes, federal labor policy requires that the means chosen be given full play by the courts. *United Steelworkers v. American Mfg. Co.*, 363

U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).[8]

■ In this case, the contract did set forth a grievance procedure, including a provision for binding arbitration. As such, the courts generally would not interfere in a dispute involving contract interpretation. Where, however, the means chosen prove to be ineffective in resolving the dispute, such as in this case where the arbitrators deadlocked and thus did not produce any binding decision, it seems logical for the courts to proceed as though no binding grievance procedure had been specified.

The same conclusion was reached under somewhat similar facts in *United Brotherhood of Carpenters and Joiners v. Hensel Phelps Construction Co.*, 376 F.2d 731 (10th Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 333, 19 L.Ed.2d 360 (1967). In *Hensel Phelps* the representatives charged with resolving the dispute deadlocked, and the union struck. Two days later, the employer agreed to meet the union's demands but

**3.** *See* § 203(d) of the Taft-Hartley Act, 29 U.S.C. § 173(d) (1976) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**4.** "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980 (1957).

**5.** S.Rep.No. 105, 80th Cong., 1st Sess. 16:

If unions can break agreements with relative impunity, then such agreements do not tend to stabilize industrial relations. The execution of an agreement does not by itself promote industrial peace. The chief advantage which an employer can reasonably expect from a collective labor agreement is assurance of uninterrupted operation during the term of the agreement. Without some effective method of assuring freedom from economic warfare for the term of the agreement, there is little reason why an employer would desire to sign such a contract.

Consequently, to encourage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the Federal courts.

Quoted in *Lincoln Mills*, 353 U.S. at 454, 77 S.Ct. at 916, 1 L.Ed.2d at 979.

**6.** Sourdough in its brief has addressed only the question of existence of jurisdiction. The superior court's opinion did not state specifically whether the court considered itself without jurisdiction or simply chose not to exercise it.

**7.** *See also Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers Int'l*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) (affirmed stay to permit arbitration, rather than finding no jurisdiction); *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414 (5th Cir. 1966) (court has jurisdiction, but action taken under grievance procedure specified by contract may be asserted as bar to action).

**8.** Although numerous cases speak of court abstention only where binding arbitration is specified by contract, it seems clear that the courts may not second-guess binding decisions reached by other noneconomic means, such as employer-union grievance committees. *See General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (such a decision was enforceable under § 301).

reserved its rights under the contract. The Tenth Circuit held that the district court had properly heard the suit, reasoning that "after the contractual dispute procedure proved ineffective to resolve the dispute, the parties were free to pursue their other remedies." *Id.* at 737.

Thus, the fact that the parties had agreed to submit any disputes to binding arbitration does not, in this instance, preclude the court from exercising its jurisdiction.

▇ Local 959 strongly asserts that the contract provision setting forth the union's right to resort to economic action following a deadlock in arbitration is the exclusive final step in the grievance procedure, and should therefore be deferred to by the court. We find this argument unpersuasive. In the absence of an applicable no-strike provision in the contract, the union would have had a legal right to strike over the unresolved grievance, whether or not this right was included in the contract. We see no logical basis for a rule allowing courts to intervene when this right is not included in an agreement, but requiring them to abstain simply because the agreement spells out the right.

Rather, we are in agreement with the following views recently expressed by the Seventh Circuit:

Unquestionably "the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play." *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403. But it is one thing to hold that an arbitration clause in a contract agreed to by the parties is enforceable. It is quite a different matter to construe a contract provision reserving the Union's right to resort to "economic recourse" as an agreement to divest the courts of jurisdiction to resolve what ever dispute may arise. This we decline to do.

. . . The plain language of the statute protects the right to strike, but there is no plain language in the contract compelling the parties to use force instead of reason in resolving their differences. In our view, an agreement to forbid any judicial participation in the resolution of important disputes would have to be written much more clearly than this.

*Associated General Contractors v. Illinois Conference of Teamsters*, 486 F.2d 972, 976 (7th Cir. 1973) (footnotes omitted).[9]

In support of its position, Local 959 relies heavily upon dicta in *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414 (5th Cir. 1966), and *Standard Food Products Corp. v. Brandenberg*, 436 F.2d 964 (2d Cir. 1970). Such reliance is, however, misplaced.

*Haynes* held that an employee's suit for wrongful discharge was barred by the union's unsuccessful utilization of a non-arbitration grievance procedure and its refusal to strike over the issue. The "picket line" was not resorted to, and none of the cases cited in *Haynes* involved resolution of a dispute by that means.[10] *Brandenburg* reversed the district court's issuance of an injunction against a strike; neither party argued the issue involved here. None of the other cases cited by the union involved

---

**9.** In making the initial decision to exercise jurisdiction, the district court correctly noted that:

To accept the proposition that either a reservation of right to "economic recourse," or the resort to such, in any dispute over the meaning of a collective bargaining agreement ousts a court of existing jurisdiction to construe the agreement on application of either party (either before, during, or after there has been some resort to economic recourse) would simply mean that no signed collective bargaining agreement of this type could have any more meaning or sanctity as a contract than either party wished to accord to it at any given time. . . . Nothing which this court has found in the still developing federal case law in support of responsible collective bargaining requires or even suggests such a proposition.

*Associated Gen. Contractors v. Illinois Conference of Teamsters*, 345 F.Supp. 1296, 1299 (S.D.Ill.1972).

**10.** In one sense, however, *Haynes* was decided by economic action. The final decision there was made by a company representative, and his denial of the grievance in effect "dared" the union to strike, which the union declined to do.

abstention in contract disputes "settled" by economic muscle.

While neither *Associated General Contractors* nor *Hensel Phelps* is binding on this court, we believe both of those cases to be well reasoned and choose to follow them, since they seem to be most consistent with the general policy favoring non-economic resolution of grievances.

REVERSED and REMANDED.

CONNOR, J., not participating.