Susan T. SMITH, Plaintiff-Appellant,

v.

E. H. DAWS, as Postmaster, United States Postal Service, Miami, Florida, Defendant-Appellee.

No. 79–1581

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 4, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

**1070**

James J. McVeigh, Miami, Fla., for plaintiff-appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., Thomas H. Pigford, Senior Asst. Reg. Labor Counsel, Labor Law Div., Postal Service, Memphis, Tenn., for defendant-appellee.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff-appellant appeals from summary judgment dismissing her suit for wrongful discharge as a postal employee. Her complaint was founded on 39 U.S.C. Section 1208(b), which authorizes suit in federal district court for breach of a contract between the Postal Service and a labor organization representing its employees. The district court held that the decision of the arbitrator, pursuant to grievance procedures, was final and binding under terms of the collective-bargaining agreement and therefore barred judicial review.[1]

We affirm the district court decision. However, unlike the district court, we base our affirmance upon section 1005(a) of the Postal Reorganization Act, which provides that (with here-inapplicable exceptions) adverse actions against postal employees are regulated by a collective-bargaining agreement.[2] (The district court based its holding primarily upon jurisprudential interpretations and applications of section 203 of the Labor-Management Act, 29 U.S.C. section 173, which enunciates principles for adjustment of disputes between an employer and an employee in private industry.)

*Context facts*

The plaintiff-employee Smith, age 49, had been employed by the Postal Service for nearly nine years, from early 1968 until her discharge in October, 1976. The arbitrator's report shows an excellent work record,

---

1. We do not interpret the district court's reasons in its order granting summary judgment as holding that it had no jurisdiction to entertain this litigation. The essential holding was that there was no genuine issue of law or fact because the arbitrator's decision was final and binding. Although the reasons also included the phrase that the court was "without jurisdiction", we do not infer that the court meant other than that the court's re-determination of the merits of the arbitrator's decision was barred. As stated in *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414, 418 (5th Cir. 1966): "The fact of the matter here is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim was thereby barred. *The court has jurisdiction.* [Citation omitted.] The action under the grievance procedure, here a final decision under the terms of the agreement, may *be asserted in bar as an affirmative defense.* That is this case, and thus it must be affirmed." (Italics ours.) *Haynes* was one of the principal authorities relied upon by the district court, and it expressly rejected the employer's requested response to the question, "Are the processes of the court now available to him for contesting or avoiding that final [arbitrator's] decision?". In its summary of judicial holdings, the court stated: "The doors of the court were open but the claim was barred." 362 F.2d 418. Neither the reasons of the district court nor the arguments by the appellee suggest a holding contrary to these expressions in *Haynes*, which was expressly relied upon by the district court.

2. 39 U.S.C. section 1005 pertinently provides: "(a)(1) Except as otherwise provided in this subsection, the provisions of chapter 75 of title 5 [5 U.S.C. sections 7501 et seq., providing for administrative review of adverse actions relating to removal, suspension, reduction, etc. of civil service employees] shall apply to officers and employees of the Postal Service *except to the extent of any inconsistency with*

　(A) the provisions of any collective-bargaining agreement negotiated on behalf of and applicable to them; or

　(B) procedures established by the Postal Service and approved by the Civil Service Commission.

"(2) The provisions of title 5 relating to a preference eligible (*as that term is defined under section 2108(3) of such title* ) shall apply to an applicant for appointment and any officer or employee of the Postal Service in the same manner and under the same conditions as if the applicant, officer, or employee were subject to the competitive service under such title. The provisions of this paragraph shall not be modified by any program developed under section 1004 of this title or any collective-bargaining agreement entered into under chapter 12 of this title." (Italics ours.)

except for periods of absence in the last year of her employment. During that year, because of illness, she had requested and *been approved for* 67 days of sick leave. The arbitrator held that, under then applicable Postal Service Manual regulations, the employee Smith's discharge for excessive absenteeism was for "just cause", even though these absences had been administratively approved as justified.

In filing this present suit based on a breach of the bargaining contract, 39 U.S.C. Section 1208(b),[3] the plaintiff-employee contends that her discharge for such reason was a breach of the collective-bargaining agreement—particularly Article X (providing for vacation and sick leave) and Article XIX (which provides that the Postal Service Manual regulations shall contain nothing to conflict with the contract with regard to employees' working conditions).

On appeal, she contends that the arbitrator's decision is reviewable as arbitrary and capricious. She also points out that, within a year after the arbitrator had affirmed her discharge in May, 1977, the Postal Service itself issued instructions that adverse disciplinary action should not be taken for excessive *approved* absenteeism.[4]

*Issues*

The plaintiff asks us to determine whether the arbitrator's decision was so erroneous that it was arbitrary and capricious. However, we do not reach this question until other issues are first resolved, including: 1) whether (as the district court held) *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), and *Haynes v. U. S. Pipe & Foundry Co.*, 362 F.2d 414 (5th Cir. 1966), require us to hold that the arbitrator's decision was final and binding and could not be relitigated; 2) whether, if not, a similar holding is required by other legislative provision or jurisprudential precepts; and 3) in the event that

plaintiff's claim is not barred, whether proof that the arbitrator's decision was erroneous will suffice as a basis for a breach of contract claim.

Ultimately, we do not consider the question of the arbitrariness of the arbitrator's decision, for the resolution of these preliminary issues convinces us that the district court correctly decided that, upon the present allegations and showing, the contract-provided finality of the arbitrator's finding bars judicial review of its alleged erroneousness.

## I. *Hines-Haynes rationale and its present application*

The plaintiff Smith and her union had filed a grievance concerning her discharge and had proceeded to arbitration under the terms of the collective-bargaining agreement between the union and the Postal Service. The agreement provides that the arbitrator's decision "will be final and binding".

The district court held that the contract-provided finality of the discharge-grievance arbitration barred judicial review of its correctness on a 1208(b) claim (founded on breach of the union contract), absent any claim of inadequate union representation (and none is alleged here). The district court holding was essentially based upon two decisions that recognized this principle. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414 (5th Cir. 1966).

These decisions concerned suits by employees of private industry to enforce collective-bargaining contracts. They were based upon section 301(a) of the Labor-Management Relations Act, 29 U.S.C. Sec-

---

3. 39 U.S.C. Section 1208(b): "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

4. Memorandum, April 13, 1978, "Discipline for Excessive Absence", Senior Assistant Postmaster General, Employee and Labor Relations Group.

tion 185(a).[5] This statute is substantially identical to section 1208(b) of the Postal Reorganization Act, see note 3, *supra*, the jurisdictional statute upon which the present suit is based. The decisions were reached in effectuation of the policy expressly provided by section 203 of the Labor-Management Act, 29 U.S.C. Section 173(d): "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."

We agree with the plaintiff-appellant that the cited *Hines* and *Haynes* decisions are not necessarily determinative of the present issue.

With regard to issues of federal jurisdiction in suits for violation of collective-bargaining agreements and procedural incidents thereto, the virtually identical language and similar purpose of Labor-Management's section 301(a) and Postal Reorganization's section 1208(b), see notes 3 & 5, *supra*, do indeed permit the judicial gloss acquired by the longer-enacted Labor-Management section 301(a) to serve as an interpretive guide to the subsequent postal section 1208(b).[6] However, in the absence of similar substantive provisions applicable to suits under either statute, we see no reason why judicial interpretations of Labor-Management suits should necessarily be applicable to suits under the Postal Service provisions, at least when a suit by a postal employee concerns statutory or substantive regulations differing from those applicable to privately employed workers.

Section 203 of the Labor-Management Relations Act, 29 U.S.C. Section 173, is not among those provisions of that statute made applicable to postal workers, see 39 U.S.C. Section 1208(a). The *Hines-Haynes* rationale is thus not *necessarily* applicable to the present dispute, insofar as those decisions are based upon *Labor-Management section 203's* statutory intent that the correctness of a final settlement of a grievance dispute through the method agreed upon by the parties to a collective-bargaining contract should not ordinarily be reviewed by the courts.

II. *Judicial review of dismissal of postal worker pursuant to collective-bargaining arbitration procedure*

On the plaintiff-employee's appeal, her root argument is that she is a Civil Service employee with a statutorily-protected right to tenure, so that a judicial remedy is still available to her for her arbitrary discharge—notwithstanding the unfavorable result of the grievance and arbitration procedures to which she resorted. That is, she distinguishes herself from the privately-employed workmen in *Hines* and *Haynes*, where the employee's right to tenure was based solely upon the collective-bargaining contract.

We have noted that the *Hines-Haynes* rationale should not be mechanically applied to public employee-employer disputes, away from its original context as an interpretation of the statutory policy of the enactment regulating labor-management relations in private industry. Nevertheless, we ultimately conclude that the result reached by the district court is correct, with our conclusion being based upon a rationale similar to that in *Hines-Haynes* but ground-

---

**5.** 29 U.S.C. Section 185(a): "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

**6.** *National Association of Letter Carriers v. U. S. Postal Service*, 192 U.S.App.D.C. 55, 590

F.2d 1171 (D.C. Cir. 1978) (whether and under what criteria attorney's fees awardable); *National Association of Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir. 1971) (jurisdiction for suit by parent international against local for violation of labor "contract", i. e., national constitution); *American Postal Workers Union v. U. S. Postal Service*, 356 F.Supp. 335 (E.D.Texas, 1972) (is past practice over coffee breaks a "contract" so as to confer jurisdiction on federal district court under 1208 for violation thereof?).

ed upon a specific and different legislative provision statutorily applicable to this postal worker-employee dispute.

Applicable to the present issue is section 1005(a) of the Postal Reorganization Act, 39 U.S.C. Section 1005(a) (quoted in note 2, *supra*). This statutory section provides that the civil service enactment relating to review of adverse actions (including dismissals) shall apply to postal employees "*except* to the extent of any inconsistency with (A) the provisions of any collective-bargaining agreement negotiated on behalf of and applicable to them." (Italics ours.)

As noted earlier, the collective-bargaining agreement between the postal service and the union representing the plaintiff-employee Smith provides for grievance and arbitration procedures relating to disciplinary actions against postal employees. The contract likewise provides that the arbitrator's decision "will be final and binding". The import of the statutory regulation provided by section 1005(a) is that review of a dismissal of a postal employee shall be governed by the collective-bargaining contract, not upon statutes conferring rights of review to other civil-service employees.

Having availed herself of the grievance-review procedures of the collective-bargaining contract, the plaintiff-employee is likewise subject to the contract's provision that the arbitrator's decision is final and binding. On its face, the quoted provisions of section 1005(a) do not authorize administrative or judicial review of the correctness of the arbitrator's findings and rationale.

### III. *No breach of contract and therefore no ground for judicial relief shown*

The cause of action and jurisdictional basis of the plaintiff-employee's suit is that she was prejudiced by a violation of the collective-bargaining contract. 39 U.S.C. Section 1208(b).

As noted, the Postal Reorganization Act provides that the collective-bargaining agreement shall supersede inconsistent provisions of civil service statutes relative to adverse actions, including discharge, 39 U.S.C. Section 1005(a)(1)(A) (quoted in note 2, *supra*). Article XV of the contract here applicable provides for a four-step grievance procedure, following which the employee may request arbitration. Section 3 of this contract article also provides: "The arbitrator's decision will be final and binding." Thus, the plaintiff was accorded all rights to contest her discharge to which she was entitled under the collective-bargaining agreement.

Her essential complaint, however, is that the arbitrator committed error in finding that just cause for removal for excessive absenteeism could be based on administratively approved absences, a ruling then in accord with postal manual regulations. However, the arbitrator's mistake (if such it was), violated no contractual right (the sole basis for this suit), where the plaintiff herself exercised her contractual right to arbitration—which correlatively included her acceptance of the arbitrative decision as final and binding. "The grievance processes cannot be expected to be error-free. The finality provision has sufficient force to surmount occasional instances of mistake." *Hines, supra*, 424 U.S. at 571, 96 S.Ct. at 1059.

### IV. *The employee Smith's supplementary contentions on appeal*

The plaintiff-employee argues on appeal additional reasons why the dismissal of her suit should be reversed or, at least, why there should be a remand for determination of the legality of her discharge in the light of a change in postal service disciplinary grounds occurring shortly after her employment was terminated. These additional arguments relate to (a) her contention that on the face of the pleadings and evidence she is a "preference eligible" employee who cannot statutorily be deprived of her civil-service rights of review and (b) her showing of a clarification of postal employee regulation, indicating that her discharge was illegal.

a) *The plaintiff as a "preference eligible" employee statutorily excepted from effects of collective-bargaining agreement?*

The plaintiff Smith argues that she is statutorily excepted from the loss of her

right of review by the terms of a collective-bargaining agreement. Most favorably to the plaintiff-employee, her contentions may be stated as follows:

She is an employee of the postal career service, part of the federal civil service. 39 U.S.C. Section 1001(b). The provisions of a postal workers collective-bargaining agreement may indeed prevail if inconsistent with statutory provisions regulating the discharge of civil service employees. 39 U.S.C. Section 1005(a)(1) (quoted in note 2, *supra*).

Nevertheless, she argues she is a "preference eligible" employee and that therefore her statutory rights as a civil service employee, including appeal of a wrongful discharge to the Civil Service Commission (now the Merit Systems Protection Board), could not be affected by a collective-bargaining agreement. 39 U.S.C. Section 1005(a)(2) (quoted in note 2, *supra*).[7] Therefore, her exhaustion of her grievance-arbitration rights under the collective-bargaining agreement, a necessary pre-requisite to seeking judicial remedy, *Vaca v. Sipes*, 386 U.S. 171, 184–85, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), should not bar judicial review of an arbitrary discharge for *approved* absences in violation of her contractual rights (including her right to sick leave). The essence of plaintiff's argument is that she is a preference eligible rather than just an ordinary postal employee and that therefore her right to appeal has been preserved.

However, neither the pleadings nor the evidence show that the plaintiff-appellant is a "preference eligible" within the meaning of 39 U.S.C. Section 1005(a)(2), so as to confer upon her appellate rights in excess of those recognized by the union contract—even accepting the plaintiff's construction that, if she is a "preference eligible", the statutory section prohibits the collective-bargaining agreement from depriving her of any appellate rights she had in such category.[8] The prohibition of section 1005(a)(2), if it is such, expressly applies only to "a preference eligible (*as that term is defined under* [5 U.S.C.] *section 2108(3)* * * *)," a definition restricted to preference rights given veterans and some members of their families.[9] Neither the pleadings, the evidence, nor any contention in brief indicate that the plaintiff-appellant is within the category of "preference eligible" employees as thus statutorily excepted from relegation to collective-bargaining rather than civil-service disciplinary review rights.[10] Her argument that she is within this statutory exception therefore fails.

**7.** At the time of the plaintiff's discharge, a "preference eligible employee", *as then defined by 5 U.S.C. Section 7511* ("a permanent or indefinite *preference eligible* who has completed a probationary or trial period as an employee"), was statutorily entitled to an appeal to the Civil Service Commission from adverse administration action. 5 U.S.C. Section 7701. For present purposes, we accept the plaintiff's argument that judicial review would be available for an arbitrary administrative determination supporting the discharge of a preference eligible employee. See, e. g., Annotation, 25 A.L.R.Fed. 443, 456–58 (1975); *Dozier v. United States*, 473 F.2d 866 (5th Cir. 1973); *Vigil v. Post Office Department*, 406 F.2d 921 (10th Cir. 1969).

However, it should be noted that the term "*preference eligible* employee" is a term referring to an employee who is a "preference eligible", a term which is defined by another statute (see note 9, *infra*). See Annotation, 25 A.L.R. Fed. 443, 445–46, n.2 (1975).

**8.** Under Article XVI, section 6, of the collective-bargaining contract a preference eligible employee is not deprived of rights of appeal under the Veterans Preference Act; but, if he so appeals, he waives any right to the grievance-arbitration procedure provided by the contract. The plaintiff employee would argue that the contract does not provide the converse —i. e., that resort to the grievance arbitration procedure waives her statute-mandated right to appellate review.

**9.** 5 U.S.C. Section 2108(3)'s definition of "preference eligibles", originally enacted as part of the Veterans Preference Act, affords preference eligibility to veterans, their unmarried widows or widowers, or (in limited circumstances) their spouses or mothers.

**10.** The appellant's brief, p. 4, refers to a preference eligible employee as a permanent employee who has completed a probationary or trial period as an employee of a federal agency, apparently assuming from the definition of 5 U.S.C. Section 7511 (see note 7, *supra*) that the Postal Reorganization Act's section 1005(a)(2) referred to appellate rights of all permanent employees rather than only (see note 9, *supra*) to those classified by the Veterans Preference Act as "preference eligibles".

*b) Remand in the light of change in postal employee regulations?*

The plaintiff likewise urges remand for reconsideration in the light of a change in postal employment policy soon after her discharge. In 1976, she was fired from her position as distributor clerk at the Miami post office for excessive (although administratively-approved) absenteeism. Within a year of the arbitrator's decision, the Postal Service no longer permitted *approved* absence to be considered disciplinary cause (see note 4, *supra*).

Likewise (as the agency decision below cited states), a distributor clerk (Kibort) at the same post office was discharged in 1973 (prior to plaintiff's discharge) for the same cause as the plaintiff. However, Kibort possessed or exercised administrative civil service appeal rights, and his discharge was ultimately held to be contrary to civil service regulations.[11] *In the Matter of Francis A. Kibort*, decision of the Merit Systems Protection Board, June 29, 1979.

We are not unsympathetic to the plaintiff's complaint that she, a civil service employee, received disparate if not inequitable treatment as a result of her resort to the grievance-arbitration procedure provided by the collective-bargaining agreement. Ultimately, however, her present suit—based solely upon a breach of a collective-bargaining agreement, 39 U.S.C. Section 1208(b)—must fall because no such breach is shown and she herself requested arbitration with its contract-provided conclusiveness.

AFFIRMED.

**11.** The specific civil service regulation offended was CFR 752.104 (1976), providing for no adverse action against an employee except for such cause as promotes the efficiency of the service, as supplemented by the interpretative guidelines provided by Federal Personnel Manual Supplement 752–1, by which a "cause" for disciplinary offense was defined as "a recognizable offense against the employer-employee relationship." Therefore, the agency's approval of an employee's request for leave, thereby releasing him/her from an obligation to report for duty, prevents the agency from considering the absence to be a breach of the employer-employee relationship.

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.