LOCAL LODGE NO. 1426, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, and Douglas Lourens, Appellees,

v.

WILSON TRAILER COMPANY OF SIOUX CITY, a corporation, Appellant.

No. 63406.

Supreme Court of Iowa.

March 19, 1980.

Paul W. Deck of Deck & Deck, Sioux City, for appellant.

MacDonald Smith and Harry H. Smith of Smith & Smith, Sioux City, for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

McCORMICK, Justice.

This is an appeal by an employer from a decree in an equity case holding that an employee was wrongfully discharged and was entitled to reinstatement and back pay. We reverse the trial court because we find that the employee is bound by a notice he gave the employer that he was quitting.

Two principal questions are presented. The first is whether the employer's final answer under grievance procedures barred judicial relief. The second is whether the employee had a right to withdraw his quit notice before its effective date when the employer had already awarded the job to another employee in reliance upon the notice.

Plaintiff Local Lodge No. 1426, International Association of Machinists and Aerospace Workers, AFL–CIO, represents the employees of defendant Wilson Trailer Company of Sioux City. Plaintiff Douglas Lourens was a member of the union who was employed by Wilson as a welder, and this case involves the circumstances under which his employment terminated on March 17, 1978.

Lourens decided to leave his job with Wilson for other employment. At 7:10 a. m. on Monday, March 13, 1978, he gave his foreman a written note stating that his last day at Wilson would be Friday, March 17, 1978. After receiving the note from the foreman, the general supervisor at 9:30 a. m. on March 13 posted a "Notice of Job Opening," inviting bids for Lourens' job. Pursuant to the collective bargaining agreement, the notice was posted for twenty-four hours, during which period employees wishing to apply for the job could do so in writing. The vacancy was to be filled on the basis of qualifications and seniority. By 7:30 a. m. on March 15 the job had been given to a co-employee named Pat McCarville, and notice of his successful bid was posted at that time. Later that morning Lourens told his foreman he would like to withdraw his quit notice. The foreman said he would inform his superiors. Wilson took the position Lourens had quit but was asking to be rehired. After reviewing and discussing his record with other management representatives, Wilson's personnel manager decided Lourens would not be rehired. As a result, the foreman told Lourens at 3:00 p. m. on Friday, March 17, to turn in his tools, and Lourens' employment terminated that date.

The collective bargaining agreement established a three-step grievance procedure. A grievance was first to be taken to the foreman whose answer was to be given within three working days, then it could be taken to the plant manager, whose answer was to be given within five working days, and finally it could be taken to the vice president, manufacturing, or his representative, whose answer was to be given within five working days. The contract also provided: "The Union will notify the Company of its intent within 30 calendar days of the Company's answer at STEP 3. If no such notice is given by the Union, the grievance will be considered to be settled on the basis of the Company's answer in STEP 3." The contract provided that no cessation of work, slowdown or lockout could occur except when all steps of the grievance procedure had been exhausted without agreement having been reached.

In the present case, the union pursued a grievance in Lourens' behalf, alleging he had been wrongfully discharged. The grievance was denied through each of the

three steps. At the conclusion of that procedure, the union did not take a strike vote. Instead, the present action was commenced. In its answer, Wilson urged an affirmative defense that Lourens' only recourse after exhaustion of the grievance procedure was the union's right to strike. Wilson also denied the merits of Lourens' claim.

I. *The right to seek judicial relief.* The trial court held that the right to strike was not an exclusive remedy after exhaustion of grievance procedures, and Wilson contends this ruling is wrong.

The contract does not in express terms make the final administrative answer final except for the union's right to strike. The evidence of bargaining history shows the subject was not discussed before the contract was entered. The notice of intent provision had not been in prior contracts, and the parties agree it was added at Wilson's request in order to give it the right to advance warning of strikes. Thus the parties agree the notice referred to is a notice of intent to strike. Wilson contends this makes the strike the only remedy after conclusion of the grievance procedure, but the union contends an alternative right to seek judicial relief on the contract is not foreclosed.

Unless prohibited by the terms of a collective bargaining agreement, a party has the right to sue for violation of the contract in federal district court under section 301(a) of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 185(a) (1976). State courts have concurrent jurisdiction to entertain such actions. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

When such actions are brought in state courts, the "federal common law" of labor-management relations governs. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980–81 (1957). Because collective bargaining agreements are not ordinary contracts, ordinary contract principles do not necessarily apply to them. *Sergeant Bluff-Luton Education Association v. Ser-*

*geant Bluff-Luton Community School District,* 282 N.W.2d 144, 150 (Iowa 1979). *See generally* Summers, *Collective Bargaining Agreements and the Law of Contracts,* 78 Yale L.J. 525 (1969). We therefore look to federal cases for guidance in determining whether the collective bargaining agreement in the present case bars relief in the courts.

Two principal cases exist on this subject. One is *Haynes v. United States Pipe & Foundry Co.,* 362 F.2d 414 (5th Cir. 1966), the case relied on by Wilson. The other is *Associated General Contractors v. Illinois Conference of Teamsters,* 486 F.2d 972 (7th Cir. 1973), the main case relied on by the union.

In *Haynes,* the collective bargaining agreement contained grievance steps analogous to those in the present contract. However, it also provided the company's last answer on the grievance would be "final and binding" unless the union gave notice within fourteen days of its "intentions to strike in protest of such decision." 362 F.2d at 415–16. The court held that the final answer of the company in the grievance procedure became final when the union did not strike. It concluded that the district court had jurisdiction of the suit on the agreement but that the company's final answer under the grievance procedure could be asserted as an affirmative defense which would bar judicial relief.

The *Haynes* court based its holding on cases construing the policy expressed in section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d) (1976), which provides that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." No case relied on in *Haynes* had held Congress preferred use of economic weapons over recourse to the courts as a means of resolving labor disputes. Instead, the principles relied on in *Haynes* were developed in cases where arbitration was the means selected by the parties in their contracts for settle-

ment of their disputes. In those situations the Supreme Court held that the "policy [of section 203(d)] can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1406 (1960).

Under a contract provision analogous to the one in the present case, the seventh circuit distinguished the section 203(d) policy and reached a different conclusion than the *Haynes* court in *Associated General Contractors v. Illinois Conference of Teamsters*, 486 F.2d at 976:

Unquestionably "the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play." See *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403. But it is one thing to hold that an arbitration clause in a contract agreed to by the parties is enforceable. It is quite a different matter to construe a contract provision reserving the Union's right to resort to "economic recourse" as an agreement to divest the courts of jurisdiction to resolve whatever dispute may arise. This we decline to do.

In our first opinion in this case we noted that the parties had not agreed to compulsory arbitration and that the Union had expressly reserved the right to "economic recourse" in the event of a deadlock. We therefore held that the rationale of *Boys Market [v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199] did not justify enjoining the strike. The right to strike was protected by the Norris-LaGuardia Act. However, we did not, and do not now, construe the agreement as requiring economic warfare as the exclusive or even as a desirable method for settling deadlocked grievances. The plain language of the statute protects the right to strike, but there is a no plain language in the contract compelling the parties to use force instead of reason in resolving their differences. In

our view, an agreement to forbid any judicial participation in the resolution of important disputes would have to be written much more clearly than this. (footnote omitted). The district court had reached a similar conclusion in that case. *See Associated General Contractors v. Illinois Conference of Teamsters*, 345 F.Supp. 1296, 1299–300 ("The federal courts, in support of collective bargaining as a sound means of approaching labor-management peace, should not say to the parties in the circumstances existing here, 'You're simply going to have to fight it out—the courts are closed so far as you are concerned.' ").

We believe the seventh circuit is right. When arbitration has been agreed upon, it is a preferred method of solving labor-management differences, but it is a peaceful means. Industrial peace is an obvious objective of federal labor law. *See Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 247–48, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199, 208–09 (1970) (allowing injunction of strike where dispute was arbitrable); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 n.4, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409, 1415 ("Complete effectuation of the federal policy is achieved when the agreement contains both an arbitration provision for all unresolved grievances and an absolute prohibition of strikes. . . . ."). We cannot believe Congress intended the parties to be limited to economic warfare as a means of settling disputes when the collective bargaining agreement does not purport to impose such a limitation.

■ The agreement in the present case does not expressly make the right to strike the only remedy of the union after exhaustion of grievance procedures, and the bargaining history does not show any such limitation was intended. Therefore we hold that the union and Lourens are not barred from having the courts decide the dispute.

II. *The merits of the case.* The controlling question on the merits is whether Lourens had a right to withdraw his notice to quit. In answering this question, we must

examine the terms of the contract and the federal common law of labor relations. *See Lincoln Mills*, 353 U.S. at 456–57, 77 S.Ct. at 918, 1 L.Ed.2d at 980–81. In searching for the applicable common law, it is helpful to examine the decisions of arbitrators, who are charged with knowing the common law of the industry and the shop. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581–82, 80 S.Ct. at 1352–53, 4 L.Ed.2d at 1417.

The parties agree the contract does not contain any express provision establishing a procedure for quitting, except that an employee must give at least seven days' notice of his intention to do so to be entitled to pay for accrued vacation. The parties also agree the contract provisions authorizing discharges for good cause were not followed and have no application here. Lourens acknowledges he gave notice of quitting but contends he had a right to withdraw it when he attempted to do so. Wilson contends Lourens quit and was not entitled to withdraw his notice. The issue was not discussed during bargaining.

The trial court applied ordinary contract principles in holding Lourens had a right to withdraw his notice and awarding him relief. However, the case should have been decided under the federal common law of labor relations. Therefore we must determine whether Lourens is entitled to relief under those principles. We have no occasion to decide whether the trial court would be right if the case were governed by ordinary contract law.

Arbitrators have uniformly held that unless the collective bargaining agreement provides otherwise, quitting requires an intention to terminate the employment relationship accompanied by an overt act carrying out the intent. *See, e. g., E. C. Jones, Inc. v. International Association of Machinists Local 1471*, 53 Lab.Arb. & Disp.Settl. 1100, 1103 (1969) (Bell, Arb.); *LaFollette Shirt Co. v. UMW Local 228*, 11 Lab.Arb. & Disp.Settl. 598, 599 (1948) (McCoy, Arb.). When an employee gives a definite notice of leaving employment at a future date, the arbitrators hold that the employee has quit.

*See, e. g., A. R. A. Manufacturing Co. v. Local 300, Allied Industrial Workers*, 67 Lab.Arb. & Disp.Settl. 1195 (1976) (Gowan, Arb.); *ITT Cannon Electric v. UAW Local 509*, 47 Lab.Arb. & Disp.Settl. 454, 456 (1966) (Roberts, Arb.); *Transcon Lines v. Retail, Wholesale & Department Store Local 135*, 40 Lab.Arb. & Disp.Settl. 469, 472 (1963) (Marshall, Arb.); *Addressograph-Multigraph Corp. v. Office Employees Local 49*, 29 Lab.Arb. & Disp.Settl. 700, 703 (1957) (Dworkin, Arb.) ("While the actual physical departure or severance was to take place at a future date, this did not qualify the finality of the decision to relinquish his job."); *Strauss Fasteners, Inc. v. United Electrical Workers Local 475*, 3 Lab.Arb. & Disp.Settl. 239, 241 (1946) (Kaplan, Arb.). Under these decisions, Lourens' notice would be sufficient to constitute a quit. He expressed an intent to quit in his written notice and manifested it by giving the notice to his foreman. The fact he acknowledges he intended to start another job the next week shows he was serious about quitting. Thus the notice was effective as a voluntary termination of employment unless he had a right to retract it.

The rule applicable in such a situation depends on whether Wilson had a past practice of permitting withdrawals in similar situations. If it did, it could not arbitrarily refuse to allow Lourens to withdraw his notice. *See A. R. A. Manufacturing*, 67 Lab.Arb. & Disp.Settl. at 1196–98; *Stewart-Warner Corp. v. United Steelworkers Local 4911*, 53 Lab.Arb. & Disp.Settl. 1103 (1969) (High, Arb.). If Wilson did not have such a past practice, some arbitration decisions hold the company could refuse for any reason to permit him to withdraw his notice. *See, e. g., FMC Corp. v. International Association of Machinists District Lodge 93*, 62 Lab.Arb. & Disp.Settl. 222, 225 (1974) (Garbarino, Arb.); *ITT Cannon Electric*, 47 Lab.Arb. & Disp.Settl. at 456–57. Other decisions would permit withdrawal unless the company had so changed its position in reliance on the notice that it would suffer loss if withdrawal were permitted. *See, e. g., Muter Co. v. UMW Local 15020*, 47 Lab.Arb. & Disp.Settl. 332, 336 (1966) (DiLeone,

Arb.); *Consumers Union of the United States, Inc. v. American Newspaper Guild Local 3*, 22 Lab.Arb. & Disp.Settl. 238, 239 (1953) (Gray, Arb.). The two lines of authority are analyzed in *Gardiner-Denver Co. v. United Steelworkers Local 3029*, 65 Lab. Arb. & Disp.Settl. 82 (1975) (Wheeler, Arb.).

 The union alleges Wilson had a past practice of permitting withdrawals in situations like this, but the record does not support this allegation. Employees had attempted to revoke quit notices on two prior occasions. In one case Wilson refused to permit withdrawal and the employee was terminated. The union went through the grievance process but did not pursue the matter beyond Wilson's final refusal to reinstate him. In the other case, an employee quit during a strike and changed her mind a few days later, while the strike was still in progress and before Wilson had acted on her notice. She was reinstated, according to Wilson because her work had been satisfactory. No past practice of permitting withdrawals in circumstances like those in this case was shown. Therefore the "past practice rule" is not applicable here. We have no occasion to decide what the result would be if it were applicable.

Furthermore, we need not decide whether Lourens could have withdrawn his quit notice in the absence of detrimental reliance. This is because Wilson did rely detrimentally upon his notice when it posted and filled his job before he attempted to withdraw. Wilson followed the contract in opening Lourens' job to bids and awarding it to McCarville. Forcing Wilson to reinstate Lourens would either leave the company with two employees in the same job or expose it to the risk of a contract claim by McCarville. In either event Wilson would suffer loss from the very disruption in continuity of its operations which it sought to guard against when it exercised its contract right to fill the position in reliance on the notice. Wilson's change of position in the present case was sufficient under the arbitration decisions to deny Lourens the right to withdraw his quit notice.

Therefore we hold that the trial court erred in holding Lourens was wrongfully discharged and declaring his right to be reinstated with back pay.

REVERSED.