DAVID SANDERS, APPELLEE, V. MAY BROADCASTING CO.,
A CORPORATION, DOING BUSINESS AS "KMTV 3,"
APPELLANT.

336 N.W.2d 92

Filed July 1, 1983. No. 82-433.

Thomas C. Lauritsen and Soren S. Jensen of Swarr, May, Smith, Andersen & Jensen, for appellant.

Martin A. Cannon of Matthews, Cannon & Riedmann, P.C., for appellee.

BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

BOSLAUGH, J.

This appeal arises out of a controversy concerning a contract of employment between the plaintiff, David Sanders, and May Broadcasting Co. (KMTV). The plaintiff claimed that he had been constructively discharged without justification from his position as sports director at KMTV. The jury returned a verdict for the plaintiff and awarded damages pursuant to a liquidated damages clause in the contract. KMTV appeals.

On June 2, 1980, Sanders accepted the position as sports director and sports announcer for KMTV. The contract described the responsibilities of the po-

sition as follows: "2. During the term of the agreement, you will be employed as sports director and sports anchor announcer and you will also be assigned other duties in addition to being but not limited to co-producer and on-the-air announcer of the Tom Osborne Show, KMTV Golf Tournament, and Creighton Basketball, and other such similar programs which may be appropriate considering your background and experience and you agree to undertake such responsibilities as may be assigned to you by the news director in this connection. Your main responsibility will be to act as sports director and sports announcer for prime-time newscasts. You will report to the news director of KMTV. As indicated, during your term of employment you may be required to perform duties and assist in promotion of programming in such way as is befitting your status, compensation and abilities."

The term of the agreement was 24 months. The contract included a clause which permitted either party to terminate the contract voluntarily by payment of an amount equal to 6 months' salary to the other party.

On April 15, 1981, Keith Nichols, the news director and the immediate supervisor of the plaintiff, sent the following memorandum to Sanders: "The purpose of this communication is to inform you of our expectations of you as Sports Director.

"We expect you to accomplish these goals during the next 30 days, ending no later than May 18th, 1981.

"In addition, I will expect a *written* report on your progress on a weekly basis.

"We expect the following:

"1. You are to make personal contact with all Class A High School, UNO, and Creighton coaches as soon as possible, along with their assistants.

"2. You are to do at least one remote sportscast per week.

"3. You are to accept as many speaking and/or sports dinner invitations as possible, and provide

a list of all invitations received either orally or in writing.

"4. You are to act as Sports Director as that pertains to assigning and staffing Terry and Ann in conjunction with the desk, as well as the smooth and efficient operation of the Sports Department.

"5. You are to cover at least one story daily.

"6. As Sports Director, you are expected to cover major sports events of the region, working Saturdays and/or Sundays.

"7. You are being paid to appear on the air, you are expected to *be on* the shows you are assigned.

"If the goals are not reached in the prescribed time, we will consider that to be a breach of contract and you will be terminated without compensation. If any part of this memo is not clear, please discuss it with Roger or myself immediately."

The plaintiff, through his counsel, replied to this memorandum, stating that he considered it a constructive discharge from the 1980 contract. Sanders stated that the memorandum constituted an offer of new, more burdensome employment without an increase in compensation. Sanders then requested payment of liquidated damages as provided in the contract. KMTV responded that it considered this communication to be a resignation.

This action was brought to recover the liquidated damages, alleging that the plaintiff had been constructively discharged. KMTV filed a counterclaim for damages, alleging that Sanders had breached the contract.

At trial, the contract, memorandum, and Sanders' response were received in evidence. Sanders testified that the demands made in the memorandum were nearly impossible to accomplish in the 30-day time span and were otherwise unreasonable. The jury returned a verdict for Sanders in the amount of $17,996.

On appeal KMTV contends that a verdict should

have been directed in its favor on the issue of constructive discharge.

The evidence relating to the issue of constructive discharge was largely documentary, consisting of the contract and the memorandum from Nichols dated April 15, 1981. This evidence, together with the testimony of the plaintiff, was sufficient to sustain a finding that he had been constructively discharged by the defendant.

In *Brock v. Mutual Reports, Inc.*, 397 A.2d 149, 152 (D.C. App. 1979), the court defined constructive discharge as follows: "[W]hen an employee contracts to fill a particular position any material change in duties or significant reduction in rank will constitute a constructive discharge which, *if unjustified*, is a breach of contract." The employee bears the burden of showing such a discharge; the employer must prove that the discharge is justified. *Id.*

The federal courts have defined constructive discharge as it is used in labor and civil rights litigation. "The doctrine of constructive discharge is applied when an employer deliberately renders an employee's working conditions intolerable, thus forcing him to quit his job." *Johnson v. Nordstrom-Larpenteur Agcy., Inc.*, 623 F.2d 1279, 1281 (8th Cir. 1980), *cert. denied* 449 U.S. 1042, 101 S. Ct. 622, 66 L. Ed. 2d 504; *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444 (10th Cir. 1981).

A factual situation similar to that in the present case was presented in *Mair v. Southern Minnesota Broadcasting Co.*, 226 Minn. 137, 137-41, 32 N.W.2d 177, 177-79 (1948): "On August 1, 1945, defendant employed plaintiff as its general manager for a term of five years, at a fixed salary per year, with a bonus, depending upon the increased profits of the business. The contract is in writing. It states that the duties to be performed by the general manager are those which usually appertain to such employment. After more than a year's operation of the business under plaintiff's management, the board of

directors of the company was dissatisfied. The net income had decreased. The directors felt that the operating expenses were too high and that the income from the business was less than it should have been. On September 26, 1946, plaintiff received the following written order from the management:

" 'To Lester A. Mair:

" '*The Board* of Directors *directs you to* appoint Maxine Jacobs, Assistant Manager of the Southern Minnesota Broadcasting Company, immediately, and *until further notice issue all orders through her* and contract for no expenditures without her approval. You are further directed to post notice of her appointment and authority as to execution of your orders on the bulletin board forthwith.

" 'Mrs. G. P. Gentling,
   Chairman, Board of Directors,
   Southern Minnesota Broadcasting
   Co.' (Italics supplied.)

"Upon receipt of this order, plaintiff refused to continue with his work as long as the order was in effect. Defendant thereupon discharged him.

"The trial court held that as a matter of law the order was unreasonable and directed a verdict as stated.

. . . .

"The question, then, for determination is whether the order given plaintiff on September 26, 1946, was a reasonable order. If reasonable, it was his duty to obey, and his refusal to do so would justify defendant in discharging him. If unreasonable and inconsistent with the contract, his refusal to obey would be no justification for discharge. . . .

. . . .

"In 35 Am.Jur., Master and Servant, § 35, the rule is stated:

" 'When an employee is engaged to fill a particular position in the service of his employer, any reduction of the rank or a material change in the duties of the employee is, in the absence of anything to

justify the employer in so acting, a violation of the contract of employment and will form the basis of an action by the employee for damages for breach of contract.'

"In the instant case, plaintiff was permitted to retain the name of manager, but his authority and prestige were taken away from him. It is fair to assume that no one in the position of plaintiff would have accepted the employment with such restrictions.

. . . .

"So in this case there is no issue of fact for the jury. As to the reasonableness of the order, reasonable minds can come to but one conclusion. If so, it was for the trial court to determine as a matter of law. In making the determination that the order in question was unreasonable, it is our opinion that the trial court was clearly right." See, also, Annot., 63 A.L.R.3d 539 (1975). For Nebraska cases which find a constructive discharge when an employer refuses to allow the employee to perform, see, *Schlueter v. School Dist. No. 42*, 168 Neb. 443, 96 N.W.2d 203 (1959); *Lee v. Ralston School Dist.*, 180 Neb. 784, 145 N.W.2d 919 (1966).

In the present case the demands made upon Sanders in the April 15 memorandum materially changed the duties of the position. While no one item listed in the memorandum seems clearly outside the scope of his duties as a sports director, the fact that each was to be accomplished within 30 days was a substantial change from the original contract. No justification for these demands was proffered by KMTV other than Nichols' statement that Sanders needed to be "hit . . . over the head with a two by four." The fact that the demands were made without regard to whether it was possible to accomplish them in the time allotted warrants a conclusion that the demands were unreasonable and were designed to make working conditions intolerable so that Sanders would quit. The jury could find that Sanders

was entitled to treat the memorandum as a constructive discharge and breach of the employment contract.

The defendant contends that instruction No. 10 was erroneous because it misstated the issues and tended to confuse the jury. The instruction was as follows: "You are instructed that the plaintiff in this case has the obligation to yield obedience to all reasonable rules, orders and instructions of the employer that are within the scope of the contract of employment. On the other hand, the employer may not require an employee to perform duties not required by the contract or not within the scope of the employment terms of the contract and the refusal of the palintiff [sic] to yield obedience to the rules, orders and instructions that are not within the scope of the contract can not be considered as a breach of the terms of the contract of employment by the plaintiff.

"If, however, you find that by Exhibit 9, the memorandum of April 15, 1981, the defendant imposed substantial duties upon the plaintiff that were 1.(a) not within the scope of the employment contract; 1.(b) that would result in a significant reduction in rank or material change in duties required by the employment contract (Exhibit 1) or 2. imposed duties upon the plaintiff that were impossible to perform within the time frame if any, as set out in said exhibit, then you may find that plaintiff was constructively discharged by the defendant."

While the instruction may be subject to criticism because it did not state elements 1.(a) and 1.(b) in the disjunctive, we believe it was not prejudicial to the defendant or so confusing as to constitute reversible error.

The objection made by the defendant at the instruction conference referred to the wording of the last four lines of the instruction. No objection was made to that part of the instruction which is now criticized on appeal. Ordinarily, the failure to object to instructions after they have been submitted

to counsel for review precludes raising an objection on appeal. *National Bank of Commerce Trust & Sav. Assn. v. Katleman*, 201 Neb. 165, 266 N.W.2d 736 (1978); *McCready v. Al Eighmy Dodge*, 197 Neb. 684, 250 N.W.2d 640 (1977).

The defendant also contends that the letter of plaintiff's counsel, stating that the plaintiff considered the April 15, 1981, memorandum from Nichols to be a constructive discharge, was improperly admitted into evidence. The letter was relevant because it constituted the plaintiff's reply to the memorandum and stated the plaintiff's claim that he had been discharged. It tended to negative the defendant's contention that the plaintiff had voluntarily terminated his employment.

There being no error, the judgment is affirmed.

AFFIRMED.

KRIVOSHA, C.J., participating on briefs.