**Howard HABERER, Appellant,**

v.

**WOODBURY COUNTY, Iowa, Civil Service Commission, Appellee.**

No. 96–112.

Supreme Court of Iowa.

March 26, 1997.

MacDonald Smith and Michael L. Smith of Smith, McElwain & Wengert, Sioux City, for appellant.

Christina M. Gonzalez, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

In this civil service proceeding under Iowa Code chapter 341A (1995), the Woodbury County Civil Service Commission determined that the actions of the Woodbury County sheriff did not coerce deputy Howard Haberer into resigning and therefore did not constitute a constructive discharge. Although Haberer claimed that he should have been allowed to withdraw his resignation, the commission did not address that issue.

Haberer appealed to, and filed a petition for writ of certiorari in, the district court challenging the commission's decision on the constructive-discharge issue. He also raised the withdrawal-of-resignation issue. The district court concluded there was substantial record evidence to support the commission's decision on the constructive-discharge issue. The court also concluded that Iowa law does

not provide for a right to withdraw a resignation that has become effective and found that Haberer's resignation was effective when he tendered it. For this reason, the court determined that the commission was not required to address this issue and saw no need to remand it to the commission. We affirm.

## I. *Background Facts and Proceedings.*

Haberer was a Woodbury County deputy sheriff until he resigned on July 16, 1995. He had been a deputy sheriff for about fourteen years.

In mid–1993 Haberer's marriage was dissolved and he was ordered to pay child support. At about the same time, Haberer's female friend filed criminal complaints against him because of a personal dispute. The sheriff referred the complaints to the Iowa Division of Criminal Investigation (DCI). Based on the DCI's investigation, Haberer was charged with five crimes. The charges, however, were unrelated to the friend's complaints.

Although the district court dismissed the charges, the special prosecutor appointed to prosecute them appealed. We affirmed the dismissal. *See State v. Haberer,* 532 N.W.2d 757, 758 (Iowa 1995).

While the criminal case was pending on appeal, the sheriff placed Haberer on paid suspension. The sheriff also prohibited Haberer from engaging in off-duty law enforcement work while he was on suspension.

By September 1994 Haberer had been on paid suspension for about eighteen months, and his appeal to our court was still pending. At this point, the sheriff allowed Haberer to return to work provided he agree to a 30–day–unpaid suspension and enter into a "Last Chance Agreement." Haberer agreed to the unpaid suspension and entered into the agreement, which was to last one year. Haberer contends that he requested assignment to a night patrol job through his attorney. The sheriff assigned him to an administrative job involving office work.

On July 16, 1995, Haberer received word from the Child Support Recovery Unit that his wages would be garnished because of unpaid child support. According to Haberer, this information was "the straw that broke the camel's back."

The next day Haberer orally submitted his resignation to the assistant chief, stating, "I can't do this anymore." At the same time, Haberer turned in his badge, identification, name plate, and the keys to his office and car.

After thinking over his actions and discussing it with colleagues, friends, and relatives, Haberer decided to withdraw his resignation. On July 21, 1995, four days after his resignation, Haberer tried to meet with the sheriff to withdraw the resignation. The sheriff refused to allow Haberer to do so.

On July 24, 1995, Haberer wrote to the Woodbury County Civil Service Commission requesting a hearing pursuant to Iowa Code section 341A.12. In his letter Haberer requested a hearing regarding "circumstances surrounding my termination/resignation from the Sheriff's Dept."

The commission held the hearing on August 4. Haberer and the sheriff were allowed to present their respective positions.

Primarily, Haberer argued he was constructively discharged. He claimed that the following chain of events forced him to resign: (1) the sheriff initiated a criminal investigation against him; (2) the investigation led to criminal charges, a trial, and an appeal; (3) the criminal proceedings cost him thousands of dollars to defend; (4) during a portion of the proceedings, the sheriff placed him on a paid suspension for eighteen months during which he was not allowed to perform off-duty law enforcement work; (5) as a condition of returning to work after the criminal proceedings, he agreed to a thirty-day unpaid suspension; (6) he was assigned to an administrative job for which he had no experience; (7) all these incidents led to increased stress and financial problems; and (8) in time, these incidents caused him to fail to pay his child support and to resign after he was notified that his wages would be garnished.

Haberer also insisted that he tried to withdraw his resignation but the sheriff refused to allow him to do so. Haberer argued that because other personnel working for the

sheriff had been allowed to withdraw their resignations and to keep their jobs, he should have been allowed to do so too.

Later the commission issued a decision, concluding that Haberer

voluntarily resigned his deputy sheriff's position solely as a result of his wages having been garnished and that no action on the part of the sheriff's department constituted harassment or placed any undue pressure or stress upon then deputy Howard Haberer to resign so as to constitute a termination or removal.

The commission did not address Haberer's withdrawal-of-resignation issue.

Haberer appealed the commission's decision to the district court pursuant to Iowa Code section 341A.12. He also filed a petition for writ of certiorari. The court consolidated the two proceedings. Haberer again raised the constructive-discharge and the withdrawal-of-resignation issues.

Contrary to Haberer's contention, the district court concluded there was substantial evidence to support the commission's decision on the constructive-discharge issue.

On the withdrawal-of-resignation issue, Haberer contended the commission erred by not determining whether he had the right to withdraw his resignation. The court noted that the commission's decision contained no findings (1) about the past practices of the sheriff in allowing a withdrawal of resignation and (2) as to whether the sheriff detrimentally relied on the resignation before Haberer's attempt to withdraw it. The court then stated the issue this way: "If the Sheriff's department were legally required to permit withdrawal depending on its past practices or detrimental reliance, remand would be appropriate for a determination of these facts."

The court concluded that Iowa law does not provide for a right of withdrawal after the resignation has become effective. For this reason, the court concluded, the commission was not required to address the issues of detrimental reliance or the sheriff's past practices and a remand was therefore not necessary. The court denied the appeal and

annulled the writ of certiorari. Haberer's appeal to our court followed.

On appeal, Haberer again raises the constructive-discharge and withdrawal-of-resignation issues.

II. *Jurisdiction.*

■ Civil service provisions for deputy sheriffs are found in Iowa Code chapter 341A. Iowa Code section 341A.12 limits the commission's jurisdiction to removals, suspensions, or demotions. The commission determined that Haberer's resignation was not a removal, suspension, or demotion and therefore concluded it had no jurisdiction to hear Haberer's appeal under section 341A.12.

The commission, however, decided it did have jurisdiction to hear the appeal under Iowa Code section 341A.6(4) and (5). Those provisions, the commission concluded, gave it broad and general powers to hear and determine complaints involving "other matters as may be referred to the commission." *See* Iowa Code § 341A.6(5).

Contrary to the commission's conclusion, we think the commission had jurisdiction under section 341A.12 to hear Haberer's appeal. Because a constructive discharge alleges the loss of employment attributable to the actions of an employer, we think such a discharge is included in the term "removal" within section 341A.12. *Cf. Schulz v. City of Davenport,* 444 N.W.2d 479, 481 (Iowa 1989) (holding that constructive discharge is a "discharge" within the meaning of Iowa Code section 400.20, which similarly limits jurisdiction of civil service commission to "suspension, demotion, or discharge"); *see also Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 1244–45, 32 Cal.Rptr.2d 223, 226, 876 P.2d 1022, 1025 (1994) (en banc) (holding that constructive discharge occurs when the employment relationship is actually severed involuntarily by the employer's acts against the will of the employee and is legally regarded as a firing rather than a resignation).

Once Haberer quit his job and he attributed that quit to a resignation coerced by his employer, the commission had jurisdiction under section 341A.12 to hear his appeal as one involving a "removal" from employment.

We also think the commission had jurisdiction to hear the withdrawal-of-resignation issue because it was inextricably intertwined with the constructive-discharge issue.

We express no opinion whether the commission had jurisdiction to hear Haberer's appeal under sections 341A.6(4) and(5).

### III. *Scope of Review.*

■ In reviewing Haberer's appeal pursuant to Iowa Code section 341A.12, the district court is "to measure the commission's action by a standard of good faith prompted solely by 'cause.'" *Hawkinson v. Louisa County Civil Serv. Comm'n,* 431 N.W.2d 350, 353 (Iowa 1988). Thus, "the commission's decision must be upheld if based on cause and reached in good faith." *Id.*

■ "Good faith" means honesty of intention. *Id.* In determining whether cause exists, the district court must focus "on the ability and fitness of an employee to discharge the duties of his or her position, bearing in mind the legislative purpose to protect the public against incompetence and maintain high standards of performance." *Id.*

■ In deciding the appeal, the district court's review is at law. *Id.* In determining whether the commission's decision meets the statute's standard of good faith and cause, the district court must employ the substantial evidence standard. *Id.* Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion. *Briggs v. Board of Directors.,* 282 N.W.2d 740, 743 (Iowa 1979).

In our review, we are governed by the same principles. If we reach the same conclusion as the district court, we affirm; otherwise, we reverse.

Iowa Rule of Civil Procedure 308 provides that a writ of certiorari shall not be denied even though the plaintiff has another "plain, speedy or adequate remedy." Thus, in a civil service proceeding this court held that a petition for writ of certiorari gave the district court authority to hear and decide the case in an original certiorari proceeding even though a statutory provision (Iowa Code section 400.27 (1983)) provided for the method of appeal. *Bogue v. Ames Civil Serv. Comm'n,* 368 N.W.2d 111, 113 (Iowa 1985) (plaintiffs filed a petition for certiorari rather than following the appeal procedure in section 400.27).

Unlike the plaintiffs in *Bogue,* Haberer perfected his appeal pursuant to a statutory procedure for appeal. *See* Iowa Code § 341A.12. The district court therefore had authority to hear and decide the case according to the principles set out in section 341A.12. In these circumstances, Haberer's petition for writ of certiorari was unnecessary. We accordingly limit our review to the principles governing appeals under section 341A.12 as described.

### IV. *Constructive Discharge.*

■ A. *The law generally.* We have said that a "[c]onstructive discharge exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *First Judicial Dist. Dep't v. Iowa Civil Rights Comm'n,* 315 N.W.2d 83, 87 (Iowa 1982). The test for constructive discharge is objective: The fact-finder must conclude that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would be compelled to resign." *Id.* (quoting *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980)). Under these principles, Haberer had the burden to show that a reasonable person in his position would have felt compelled to resign. *Id.* at 88.

One court has recently described the inquiry into working conditions this way:

> Under the cases, an employee cannot simply "quit and sue," claiming he or she was constructively discharged. The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.

An employee may not be unreasonably sensitive to his or her working environment.... Every job has its frustrations, challenges, and disappointments; these inhere in the nature of work.... [An employee is not] guaranteed a working environment free of stress.

In order to amount to a constructive discharge, adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable. In general, single, trivial, or isolated acts of [misconduct] are insufficient to support a constructive discharge claim.

*Turner*, 7 Cal.4th at 1246–47, 32 Cal.Rptr.2d at 227–28, 876 P.2d at 1026–27 (citations omitted).

B. *The merits.* The commission made no finding that there was cause to remove Haberer from his employment. The district court's review of the commission's determination that there was no constructive discharge was therefore limited to a good-faith-and-substantial-evidence scope of review. *See* Iowa Code § 341A.12.

Bad faith in the commission's determination was not alleged either in the district court or on appeal. We therefore conclude the commission's determination was made in good faith.

■ The district court concluded there was substantial evidence to support the commission's determination that there was no constructive discharge. For reasons that follow we agree.

Some of the things Haberer claims were a part of his constructive discharge were: (1) the criminal investigation; (2) the charges, trial, and appeal; and (3) the cost to defend the criminal proceedings. As to those matters, Haberer produced no evidence that they were "caused" by the sheriff in any but the most limited sense of the word. To the contrary, the evidence supports the commission's findings that they occurred because of Haberer's own actions.

The girl friend made the initial complaints against Haberer, and the sheriff merely asked the DCI to make an independent investigation. There was no evidence that the sheriff had any control over the course that the investigation took, the charges that were filed, and the appeal that was taken. Haberer's bare allegation that "normally" such investigations were internally conducted proves nothing. This is especially true when one considers that presumably the request for an independent investigation would *increase* rather than *decrease* the fairness of an investigation. Fairness was of critical importance because Haberer was accusing the sheriff of bias.

In addition, Haberer made no allegation and presented no proof that the investigation was a malicious attempt on the part of the sheriff to harass Haberer over matters the sheriff knew were unworthy of examination. *Cf. Hargray v. City of Hallandale*, 830 F.Supp. 1467, 1472 (S.D.Fla.1993)("If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened [filing of criminal charges] by the agency is purely coercive."). Nor did Haberer allege or prove that the sheriff used the investigation to destroy Haberer's free choice to continue employment. *Id.* at 1472–74.

As mentioned, Haberer cites the prohibition of "off-duty" law enforcement work as part of his constructive-discharge claim. Significantly, Haberer does not challenge the *reason* for the prohibition, and he did not show that the sheriff imposed the prohibition to make working conditions intolerable. We agree with the commission that the sheriff had good reason to prohibit this employment. Allowing a peace officer who is on suspension to accept off-duty law enforcement work could reflect badly on the sheriff.

Additionally, Haberer claims the prohibition financially harmed him and for that reason he was unable to pay his child support. Haberer, of course, had the burden to prove this allegation and he failed to do so. He presented no evidence to show that he could not have avoided the financial effects of the prohibition by taking other outside work. For example, he produced no evidence about (1) the number of non-law enforcement jobs he applied for during the suspension, (2) the type of employment he sought, (3) the avail-

ability of non-law enforcement jobs, (4) the disparity in pay between law enforcement work and non-law enforcement work, and (5) whether he even applied for other work.

There is another factor that belies Haberer's attempt to place all of his financial woes on the sheriff. Except for a thirty-day period, Haberer was paid all the while he was on his eighteen-month suspension.

Haberer also claims that the sheriff's failure to honor his request for a patrol position when he returned to active duty was a part of the sheriff's clear pattern of conduct toward Haberer to make his life difficult. Haberer thinks the failure to honor the request for a patrol position was done because the sheriff believed Haberer had done something illegal and was not convicted. Haberer produced no evidence to prove these allegations either. Nor did he prove that his attorney ever relayed the request to the sheriff.

Finally, Haberer made no showing that his assignment to office work was (1) a change in grade, (2) inconsistent with or outside the scope of his job description, (3) a decrease in pay or prestige, (4) impossible to do, or (5) anything beyond a mere "difficulty" because of a lack of "experience." All of these bear on a constructive-discharge claim. *See, e.g., Endres v. Helms,* 617 F.Supp. 1260, 1268 (D.D.C.1985) (impossibility); *Wilson v. Board of County Comm'rs,* 703 P.2d 1257, 1260–61 (Colo.1985) (holding that if new duties were consistent with employee's job classification, there was no constructive discharge); *Sanders v. May Broad. Co.,* 214 Neb. 755, 336 N.W.2d 92, 95 (1983) (holding material change in duties or a significant reduction in rank constitutes constructive discharge, if unjustified). The change in duties to include paperwork—even if in a large amount—was simply one of the "frustrations, challenges, and disappointments [that] inhere in the nature of work." *Turner,* 7 Cal.4th at 1247, 32 Cal.Rptr.2d at 227–28, 876 P.2d at 1026–27.

On the basis of this record, reasonable minds would agree that the sheriff did nothing deliberately or otherwise to make Haberer's working conditions so intolerable as to force him to resign. No reasonable person in Haberer's position would have felt com-pelled to do so. Rather, as Haberer's own statements to the commission show, his actions were rash and intemperate. In short, substantial record evidence supports the commission's determination that Haberer was not constructively discharged.

## V. *Withdrawal of Resignation.*

On this issue, the district court concluded that Iowa law does not provide for a right of withdrawal after the resignation has become effective. Consequently, the court determined that the commission was not required to address the issues of detrimental reliance or the sheriff's past practices and a remand was therefore not necessary. Implicit in the court's determination was the recognition that Haberer's resignation was effective on the day he tendered it.

Haberer contends the district court erred in these conclusions. He cites only *Local Lodge No. 1426, International Ass'n of Machinists v. Wilson Trailer Co.,* 289 N.W.2d 608 (Iowa 1980), in support of his contention that there is a right to withdraw a resignation where the employer has a practice of allowing withdrawals or if the employer has not detrimentally relied upon the resignation. *Local Lodge* is inapposite because it deals only with the federal common law of labor relations. *Local Lodge,* 289 N.W.2d at 612–13. In fact, we explicitly stated: "We have no occasion to decide whether the trial court would be right if the case were governed by ordinary contract law." *Id.* at 612. We now reject the federal rule cited in *Local Lodge* for any cases governed by Iowa Code chapter 341A.

A. *The applicable law.* At common law public officers could withdraw their resignations at any time before acceptance. *Haine v. Googe,* 248 F.Supp. 349, 351 (S.D.N.Y. 1965) (applying rule in federal civil service litigation). The rule was a corollary to the rule that public officers whose resignations had been submitted but not yet acted upon remained under a duty to perform the functions of the office. *Id.* The rules were necessary so that "the public interests might suffer no inconvenience for the want of public servants to execute the laws." *Id.* (citation omitted).

■ For Iowa Code chapter 341A civil service cases, we adopt the *Haine* rule which allows withdrawal of resignation before its acceptance. As *Haine* points out,

[i]f, as appears, the underlying rationale of the common law cases is that the public interest requires that an officeholder cannot shed his duties without acceptance, then it follows as a matter of simple fairness that the officeholder, prior to acceptance of a tendered resignation, should have the correlative right to change his mind and retain his office. And such a policy is not contrary to the public interest. If plaintiff's services were unsatisfactory, there were available to the agency statutory procedures for her separation from service consistent with such rights to which she was entitled as a veteran. On the other hand, if her services were satisfactory, the public interest is not advanced nor efficiency of service necessarily achieved by requiring the consent of the agency in order to permit her to withdraw her unacted-upon resignation.

248 F.Supp. at 351–52.

■ B. *The merits.* As mentioned, the commission did not address the withdrawal-of-resignation issue. Nevertheless, it did make a finding that Haberer tendered his resignation on July 17, 1995 and that the assistant chief deputy accepted the resignation on behalf of the sheriff on that date. There was substantial record evidence to support these findings. Under the rule we adopt, Haberer therefore lost any right he had to withdraw the resignation on the very day he tendered it. Thereafter, any attempt on his part to withdraw the resignation had no legal effect. Under these circumstances, the district court correctly determined that the commission was not required to address the issue.

## VI. *Disposition.*

We conclude that there was substantial record evidence to support the commission's determination that there was no constructive discharge and that the determination was made in good faith. We therefore affirm on this issue.

Under the rule we adopt, Haberer could withdraw his resignation at any time before it was accepted. Because there was substantial evidence to support the commission's finding that Haberer's resignation was accepted on the day he tendered it, we conclude that any attempt on his part to withdraw it thereafter had no legal effect. We therefore affirm the district court's decision on this issue also.

**AFFIRMED.**