## IN THE COURT OF APPEALS OF IOWA

No. 21-0350
Filed August 3, 2022


**ROBERT D. MORDINI,**
    Plaintiff-Appellant,

**vs.**

**IOWA STATE PATROL, JEFF RITZMAN, and ROXANN RYAN,**
    Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


        A plaintiff appeals from a district court ruling granting summary judgment in favor of the defendants. **AFFIRMED.**


        Jacob van Cleaf of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek, Assistant Attorney General, for appellees.


        Considered by Greer, P.J., Badding, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**DANILSON, Senior Judge.**

Robert Mordini appeals from a district court ruling granting summary judgment in favor of his former employer, the Iowa State Patrol, and his former supervisors, Jeff Ritzman and Roxann Ryan. We affirm the judgment of the district court.

## I. Background Facts and Proceedings

The summary judgment record reveals the following undisputed facts. Mordini began working for the Iowa State Patrol in 1993. In early 2015, after several promotions, Mordini was assigned to an investigative role with the professional standards bureau (PSB). In that capacity, Mordini was supervised by Ritzman and Ryan and received "excellent" performance reviews. However, according to Mordini, when he expressed an opinion that some cases "weren't handled appropriately" and issued reports "in which he found that officers had committed wrongdoings," he "began to face escalating commentary" from his supervisors.

In any event, Mordini was soon offered an opportunity to "run[] a district," which he declined because it required him to move. In September 2015, Mordini was reassigned to the position of administrative sergeant at the department of public safety (DPS) headquarters. Mordini's new position was a "Lateral Intra-Agency Transfer," with the "same" salary, class, and payroll number. In December 2015, Mordini states that he spoke to then Lieutenant Governor Reynolds about "bullying, cronyism, and fiscal management issues of the DPS."

In February 2016, Mordini filed an application for disability benefits. According to Mordini, critical remarks by his supervisors, along with "being

assigned less desirable duties," aggravated an "underlying medical condition,"[1] which "trigger[ed] the need to file for disability" because he was no longer physically able to work. Mordini's application was approved, and he was placed on medical disability retirement in June 2016.

Mordini subsequently initiated this lawsuit, raising whistleblower claims of retaliation, harassment, constructive discharge pursuant to Iowa Code section 70A.28 (2016), and a claim of intentional infliction of emotional distress against the Iowa State Patrol, Ritzman, and Ryan. The defendants filed a motion for summary judgment, claiming in part that "there was no adverse action against Mordini"; Mordini was "not constructively discharged"; and "Mordini's general non-specific hostile work environment claims [we]re insufficient to meet the outrageousness standard."

Following a hearing, the district court entered an order granting the defendants' motion. Mordini appeals.

## II.    Standard of Review

We review rulings granting summary judgment for correction of errors at law. *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021). "On motion for summary judgment, the court must: (1) view the facts in the light most favorable to the nonmoving party, and (2) consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record." *Garrison v. New Fashion Pork LLP*, ___ N.W.2d ___, ___, 2022 WL 2347783, at *4 (Iowa 2022) (quoting *Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821

---

[1] As Mordini's attorney explained, "Mr. Mordini suffers from a condition called diverticulitis. It causes pain when he's put under certain forms of stress."

(Iowa 2021)). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *EMC Ins. Grp.*, 960 N.W.2d at 668).

## III.  Discussion

Mordini's claims for alleged violations of Iowa Code section 70A.28 require proof of three elements: (1) the plaintiff engaged in a protected activity; (2) he suffered an adverse employment action; and (3) he was discharged as a reprisal for his protected disclosure. *See Zwanziger v. O'Brien*, No. 11-1548, 2012 WL 4513836, at *1 n.4 (Iowa App. Ct. Oct. 3, 2012) (citing *Yockey v. State*, 540 N.W.2d 418, 422 (Iowa 1995)). On appeal, Mordini focuses on his becoming disabled in relation to the end of his former employment to support his claim of constructive discharge. He argues that he suffered an adverse employment action as the defendants' actions caused him to file for disability because he was no longer able to work due to his deteriorating health. According to Mordini, "[i]nflicting disability on an employee is sufficiently adverse employment action to rise to the level of constructive discharge." Assuming the truth of Mordini's contention, here no reasonable fact finder could conclude Mordini was constructively discharged under these facts.

A constructive discharge "exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Haberer v. Woodbury Cnty.*, 560 N.W.2d 571, 575 (Iowa 1997) (quoting *First Jud. Dist. Dep't of Corr. v. Iowa Civ. Rts. Comm'n*, 315 N.W.2d 83, 87 (Iowa 1982)). "The test for constructive discharge is objective: The fact-finder must conclude that 'working conditions would have been so difficult or

unpleasant that a reasonable person in the employee's position would be compelled to resign.'" *Id.* (quoting *First Jud. Dist. Dep't of Corr.*, 315 N.W.2d at 87). Some factors to consider include "(1) a change in grade, (2) inconsistent with or outside the scope of his job description, (3) a decrease in pay or prestige, [or] (4) impossible to do." *See id.* at 577 (detailing factors that "bear on a constructive-discharge claim").

Here, it is undisputed that Mordini's pay and benefits were not reduced when he was reassigned to the position of administrative sergeant at the DPS headquarters in September 2015. The district court found that his reassignment "constituted a minor change in working conditions." *See Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 742 (Iowa 2003). But according to Mordini, the "adverse action" by the defendants was not limited to "the two offers of transfer." Rather, Mordini alleged the defendants moved him to "a remote location so that he would be out of sight out of mind"; "regularly check[ed] [his] payroll and daybook"; asked "other workers why they interacted with [him] on Facebook or liked things [he] posted"; and assigned him "less desirable duties," including tasks "normally associated . . . with secretarial staff." Mordini stated he "had to take vacation time to leave so [he] could avoid going stir crazy" because he was "so bored sitting in the office" with "no job duties." He further alleged he "began to suffer more greatly from [his] diverticulitis" "[a]s a result of how much harassment [he] was facing."

Thus, Mordini claims a factual issue exists whether a reasonable person in his position would have felt compelled to resign, or as Mordini presents his claim in this case, to file for disability. *See Haberer*, 560 N.W.2d at 575 (setting forth

standard of review). On this issue, the district court found: "Even presuming that a claim of disability is the equivalent of resignation, the facts alleged are not sufficiently extraordinary and egregious. . . . Although less than ideal, [Mordini's] working conditions would not have been so difficult or unpleasant that a reasonable person in [his] position would be compelled to resign." We agree. And while perhaps Mordini was dissatisfied he no longer had an investigatory role for the DPS, "[t]he change in duties . . . was simply one of the 'frustrations, challenges, and disappointments [that] inhere in the nature of work.'" *See id.* (third alteration in original) (citation omitted). Moreover, Mordini provides only his conclusory opinion that his office was moved to a remote location without facts to support his allegation.

Mordini also believed his "supervisors were aware of [his] diverticulitis and its tendency to become worse when stressed as a result of [his] request for leave or accommodations." At the hearing on the motion, Mordini's attorney detailed his argument as follows:

> Our allegation is that this was done as the supervisors were aware of his diverticulitis with the intent—they were not only aware of it, but that certain things that cause it to flare up, become more problematic, and he would have to take time off. They would have to approve this time off associated with his diverticulitis. That the intent for them was to cause his condition to become so inflamed that he couldn't continue his job.
> And they succeeded in that. Mr. Mordini eventually suffered enough from that and his other health conditions that he was forced to apply for disability, to be found disabled and unable to continue his job.
> We're not challenging that he was determined incapable. What we are arguing is that he was determined incapable of going on because they put him in that circumstance. They literally took advantage of the knowledge that they gained as his supervisors to put him in a situation where he couldn't go any further because he was in too much pain.

Contrary to Mordini's arguments, he presented nothing other than a conclusory statement to indicate any supervisor knew he was experiencing "flare ups" of his diverticulitis due to stress such that he could not "continue to perform his job duties," as he alleged. Mordini claimed, "My supervisors were aware of my diverticulitis and its tendency to become worse when stressed as a result of my request for leave or accommodations." At best on this record, we perhaps can infer a supervisor knew of his health issue because leave was approved, but there is no evidence that any supervisor knew stress would impact his health any more than any individual. If such evidence existed, it was not made a part of this record.

Further, the facts do not show the critical remarks by Ritzman and Ryan to be "unusually aggravated" or amounting to a "continuous pattern," as required "before the situation will be deemed intolerable." *See id.* at 576 ("In general, single, trivial, or isolated acts of [misconduct] are insufficient to support a constructive discharge claim." (citation omitted)); *Wright v. Ross Holdings, LLC*, No. 14-1106, 2015 WL 1848534, at *3 (Iowa Ct. App. Apr. 22, 2015) (noting a constructive discharge "has not occurred 'unless the employer has been given a reasonable chance to resolve the problem'" (quoting *Van Meter Indus. v. Mason City Hum. Rts. Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004))). *See also generally Haberer*, 560 N.W.2d at 576 ("An employee may not be unreasonably sensitive to his or her working environment . . . . [An employee is not] guaranteed a working environment free of stress." (second alteration in original) (citation omitted)). Nor did Mordini point to evidence to support a finding that his supervisors "would not respond fairly" to his alleged employment-related health concerns. *See Wright*, 2015 WL

1848534, at *4 ("We are not persuaded by Wright's argument that based on past inappropriate comments by Schmidt she believed Ross Holdings would not respond fairly."); *see also Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 599 (Iowa 2017) ("The general rule is that a reasonable employee must remain and fight [grievances] on the job." (citation omitted)).

On the basis of this record, reasonable minds would not be able to find the defendants' actions caused Mordini to be unable to fulfill the duties of a peace officer such that he had to file for disability and was constructively discharged. Mordini "was not discharged, constructively discharged, or even demoted." *See Huffman v. AADG, Inc.*, No. 09-1007, 2010 WL 624855, at *4 (Iowa Ct. App. Feb. 24, 2010) (rejecting claim of constructive discharge where employee "complain[ed] about his employer's alleged failure to find him work in lieu of paying temporary disability benefits"). Upon our review, we find no error in the district court's conclusion that there was no constructive discharge.[2] We affirm the judgment of the district court.[3]

**AFFIRMED.**

---

[2] Mordini's brief specifically addresses the district court's order with regard to constructive discharge. However, our analysis above would also apply to his claim of intentional infliction of emotional distress, as the facts do not show outrageous conduct by the defendants. *Cf. Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014) (setting forth the elements for a viable claim of intentional infliction of emotional distress, including "outrageous conduct by the defendant").
[3] Because we find summary judgment was proper, we need not address Mordini's argument regarding any relief he can receive for his claims under the "current version of Iowa Code section 70A.28."